[Civ. No. 34209. Second Dist., Div. Four. Oct. 23, 1970.]

PERRY ROSENBERG et al.,
Plaintiffs, Cross-defendants and Appellants, v.
HERBERT SILINSKY, Defendant, Cross-complainant and Appellant.

270

## COUNSEL

Levinson, Rowen, Klein & Leavy and Alan F. Charles for Plaintiffs, Cross-defendants and Appellants.

Saul & Wiener and Edwin S. Saul for Defendant, Cross-complainant and Appellant.

## OPINION

FILES, P. J.—This action was brought by Perry and Herbert Rosenberg against their former tenant, Herbert Silinsky, to enjoin the use of the trade

name "Hub" and for rent allegedly unpaid. Silinsky cross-complained for an injunction against the Rosenbergs. After a trial without a jury the court issued a permanent injunction prohibiting Silinsky from using the name "Hub," "Hub Pharmacy," "Hub Medical Pharmacy" or "Hub Rx" in conducting a pharmacy in the Pacoima area. The judgment also provided that the Rosenbergs recover certain fixtures and $79.36 in unpaid rent; and that Silinsky recover from the Rosenbergs a rent deposit of $275.

The Rosenbergs appeal from the judgment insofar as it denies them a greater recovery of rent. Silinsky appeals from the portion of the judgment enjoining him. Silinsky also filed a notice of appeal from two minute orders made after judgment, but his brief offers no argument with respect to those orders and we therefore deem the appeal from the post-judgment orders abandoned.

■ The history of the controversy, as disclosed by the record read in the light most favorable to the trial court's findings (see *Bancroft-Whitney Co.* v. *McHugh* (1913) 166 Cal. 140, 142 [134 P. 1157]), includes the following:

Since the 1920's the small group of retail stores at the corner of San Fernando Road and Van Nuys Boulevard in Pacoima has been known as the Hub. In 1953 the Rosenbergs acquired from the former proprietor the business carried on in the corner storeroom under the name "Williams Liquor, Hub of Pacoima." Thereafter the Rosenbergs operated a retail business there under the name Hub of Pacoima, selling a variety of goods, including liquor, food, sporting goods, stationery, cosmetics and magazines. They also operated a ticket agency there and issued state fish and game licenses. The front entrance, which was at the corner, used the address of 10801 San Fernando Road. A large electric sign over the corner of the building said "The Hub Liquor."

In 1957 the adjacent storeroom fronting on Van Nuys Boulevard became available. The Rosenbergs acquired that room by a lease, and proceeded to remodel it as a part of their own store. The facade was changed to correspond to that of the corner store, a large opening was cut in the common wall as a passageway and the floor of the newly acquired room was made flush with the floor of the corner store. In October 1957 they commenced the operation of a pharmacy there under the name of Hub Medical Pharmacy. Defendant Silinsky, a registered pharmacist, was employed as manager. The official address of the pharmacy, as given in its license, was its street entrance, 13267 Van Nuys Boulevard.

In June 1958 the parties entered into a new arrangement, as evidenced by a written lease and a letter agreement. The Rosenbergs leased to Silin-

sky, beginning July 1, 1958, the storeroom designated as 13267 Van Nuys Boulevard. Fixtures and equipment were included in the lease, to be returned upon the expiration thereof. The rent was an agreed percentage of sales, subject to a fixed minimum. Silinsky agreed that he would sell only "those items which are used to promulgate and maintain health and hygiene to cure, prevent, treat or mitigate pain and disease." The Rosenbergs agreed not to sell any such items except headache remedies, stomach distress items and a few other specified products. Silinsky was expressly prohibited from selling cosmetics, hair preparations and baby items, since such merchandise was regularly handled by the Rosenbergs. Silinsky's customers were permitted the use of the Rosenbergs' parking lot, and Silinsky was given use of a storeroom back of the corner store. Silinsky agreed to keep the pharmacy open from 10 a.m. to midnight, or longer, but not during any hours other than the Rosenbergs' business hours.

By the letter agreement the inventory of the pharmacy was sold to Silinsky at cost.

Nothing was said orally or in the writings about the use of the name Hub. The name appears only once in the lease, i.e., the list of the pharmacy equipment which the lease required to be returned to the Rosenbergs at the expiration of the term included "Assorted rubber stamps including counter, dater and Hub Medical Pharmacy stamp."

For several years thereafter the parties operated harmoniously under this arrangement, with minor modifications. Customers moved freely between the pharmacy and the corner store to purchase the items they desired. Since the pharmacy had no direct access to the parking lot, which was to the rear of the building, pharmacy customers who used the parking lot entered via the rear door of the corner room. The Rosenbergs commonly used the name Hub Medical Pharmacy, or some variation thereof, in ordering, for their own resale, such common drugstore items as cosmetics and soap; and for this purpose the address of 10801 San Fernando Road was used as the address of the pharmacy. All parties generally held themselves out as part of the business enterprise known as the Hub. For example, while Silinsky operated the pharmacy, its address was listed in telephone directories as the corner of San Fernando Road and Van Nuys Boulevard, and as 10801 San Fernando Road, as well as 13267 Van Nuys Boulevard.

About October 1, 1966, Silinsky moved to a new store building approximately 165 feet to the southwest, known as 13281 Van Nuys Boulevard. At his new address Silinsky operated a drugstore which included, in addition to a medical pharmacy, a wide range of merchandise typical of drugstores,

including such articles as cosmetics, stationery, novelties, gift items, tobacco and film, which had been handled only by the Rosenbergs at the other location.

Silinsky erected a sign in front of his new store prominently displaying the name Hub, and in the rear he placed another Hub sign which would be seen by persons approaching the Rosenbergs' parking lot. He engaged in an extensive advertising campaign to publicize the "new location" of Hub Pharmacy at 13281 Van Nuys Boulevard.

When the Rosenbergs learned that Silinsky was leaving, they arranged with another pharmacist, Lane Frankel, to take over the old location. When Frankel applied for a license, Silinsky protested his use of the name Hub Medical Pharmacy, with the result that the State Pharmacy Board refused to issue a license to Frankel under that name. Instead Frankel was licensed to operate and did operate after October 1, 1966, as Lane Pharmacy.

The Rosenbergs filed their complaint against Silinsky for unfair competition on August 25, 1966. Each side applied for a preliminary injunction. After a hearing, the superior court, on October 14, 1966, denied the Rosenbergs' application, and it enjoined the Rosenbergs, pending trial, from using the name Hub Pharmacy or Hub Medical Pharmacy or Hub Rx.

The case came to trial on October 28, 1968, at the conclusion of which the trial court made findings of fact determining that the tradename Hub, and variations of it, had a secondary meaning identifying the business conducted at the corner of Van Nuys Boulevard and San Fernando Road, and particularly the general store of the Rosenbergs and the pharmacy located therein; that there had never been any sale of that name by the Rosenbergs to Silinsky; that Silinsky's use of the name in connection with his new store would be likely to confuse and had confused the public; that the Rosenbergs would be injured if Silinsky were allowed to continue such use.

The court also found that neither party had breached the lease; and that Silinsky had not failed to report his gross sales and pay rent thereon.

Judgment was entered permanently enjoining Silinsky from using the name Hub, Hub Pharmacy, Hub Medical Pharmacy or Hub Rx in the Pacoima area.

The remaining portions of the judgment had to do with some details of terminating the tenancy which had not been completed when the parties fell out in September 1966. Silinsky was awarded his security deposit of $275 and was ordered to turn over the fixtures listed in the lease, and the Rosenbergs were awarded the balance of $79.36 admittedly payable on the September 1966 rent.

*Silinsky's Appeal—The Injunction*

There is substantial evidence to support the finding of the trial court that over a period of years prior to October 1966 the name Hub and its variations had attained a secondary meaning as the identification of the general retail business being conducted at the corner, and that the pharmacy was, in the public eye, a department of the corner store sharing in its name and goodwill. On the record which was made, the trial court quite reasonably rejected Silinsky's contention that the Rosenbergs had, by implication, agreed that he could take with him the name Hub Pharmacy when his lease came to an end.

There is also substantial evidence that Silinsky's conduct, in opening the new Hub Pharmacy a few doors away on the same block, has caused great confusion. Customers and mail have been misdirected. Customers who do not understand that the two are no longer affiliated are embarrassed and inconvenienced. For example, patrons who have made purchases at the new Hub Pharmacy have come to the Rosenbergs for the free check-cashing service which they have long made available to Hub customers. On three occasions, when robberies have been reported at the new Hub Pharmacy, police with drawn guns have rushed into the better-known Hub on the corner.

Silinsky attempts to base an argument here upon the familiar principle that a trade name exists only in connection with an existing business and not independently, citing *Allen & Wheeler Co.* v. *Hanover Star Mill. Co.* (1916) 240 U.S. 403 [60 L.Ed. 713, 36 S.Ct. 357] and *Ward-Chandler Bldg. Co.* v. *Caldwell* (1935) 8 Cal.App.2d 375 [47 P.2d 758]. The answer is that the trial court has found that Hub identifies the Rosenbergs' business, and not Silinsky's, except to the extent that Silinsky was operating as a department of the Rosenbergs' Hub.

Silinsky correctly points out that enforcement of the trial court's judgment will itself cause confusion because some people have come to identify the name Hub Pharmacy with Silinsky, both before and since he opened his separate establishment. Some such confusion is inevitable when a business, identified by a fictitious name, undergoes some change of personnel, so that one individual formerly identified with it turns up in a similar business elsewhere. But that circumstance is not a bar to the protection of the Rosenbergs' stronger claim to the use of the name Hub for the retail business done at the same corner for a third of a century.

Not to be overlooked is that Silinsky, in opening his new drugstore, did far more than merely move the medical pharmacy which he had operated under his 1958-1966 lease. In his new location, Silinsky attached

the name Hub to a business which dealt in items such as cosmetics, gifts, novelties, stationery and tobacco, which were the merchandise stocked by the Rosenbergs in the original Hub on the corner. Silinsky's new Hub competed directly with the original Hub in a business far broader than the medical pharmacy which he had operated on the old premises.

The record adequately supports the decision of the trial court granting an injunction.

### Rosenbergs' Appeal—The Rent Claim

Throughout the period of the lease Silinsky regularly reported his receipts and paid his rent based upon those reports. The Rosenbergs made no claim of shortage until after the dispute had arisen over the name. The Rosenbergs then employed an accountant who conducted an audit. He testified he could not find in the rent reports sales totaling $68,973, which was the amount of Silinsky's sales to Bee Wholesale Drug Company. The accountant also testified the reports did not include sales totaling $1,736.24 to other sources. The sales to Bee, if included in the gross, would produce a rent of $4,483 at the agreed rate of 6½ percent, and the other alleged discrepancies would result in additional rent of $112.85.

The lease authorized Silinsky to conduct both a retail and wholesale pharmacy business, and provided that no rent would be payable on sales made "to Lessee's employees and to doctors and other pharmacies. . . ." The evidence showed that Bee was in the wholesale drug business only, and that wholesalers are not usually called pharmacies.

Silinsky testified that the reason for the "other pharmacies" provision in the lease was that he and the Rosenbergs had discussed his intention to make some sales in the wholesale market as an accommodation to others, with very little profit margin; and for that reason it had been agreed that language would be inserted in the lease eliminating rent on sales to other pharmacies. The sales to Bee were such accommodation transactions. Under the circumstances, we think the trial court correctly concluded that those sales to another wholesaler were within what the parties had intended by that exemption even though a wholesaler is not ordinarily known as a pharmacy.

With respect to the other claimed discrepancies, amounting to a $112.85 difference in rent, the Rosenbergs' accountant conceded that he had not made a complete audit, he did not check daily records, and his examination was not as accurate as he would have liked.

Silinsky's evidence was to the effect that he furnished reports of his daily operations to a certified public accountant who prepared the monthly rent

reports for him. The accountant who prepared the reports from 1964 to 1966 testified that he maintained the general ledger and prepared the sales tax returns from the same figures.

This record constitutes substantial evidence to support the finding of the trial court that Silinsky's reports were correct and that the Rosenbergs' auditor was mistaken in asserting a $112.85 discrepancy. There was no error in the trial court's decision that the Rosenbergs were not entitled to additional rent.

The judgment is affirmed. The appeal from the orders is dismissed. Neither party may recover costs on appeal.

Dunn, J., and Frampton, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.