**DAYTONA AUTOMOTIVE FIBERGLASS, a Florida Corporation, Plaintiff,**

v.

**FIBERFAB, INC., a California Corporation, Defendant.**

Civ. A. No. 77–621.

United States District Court, W. D. Pennsylvania.

July 13, 1979.

---

John R. Luke, Luke & Anthony, Pittsburgh, Pa., for plaintiff.

Robert D. Yeager, Baskin & Sears, Pittsburgh, Pa., for defendant.

## OPINION

DIAMOND, District Judge.

Daytona Automotive Fiberglass (Daytona), a Florida corporation, brought this action against Fiberfab, Inc. (Fiberfab), a California corporation, seeking various relief on the grounds, inter alia, that the defendant engaged in unfair competition in infringing the trademark "Migi" allegedly owned by the plaintiff.[1] Jurisdiction is based on diversity, 28 U.S.C. § 1332(a) and the Lanham Trade-Mark Act of 1946, 15 U.S.C. § 1051 et seq.

The matter presently under consideration by the court is defendant's motion for partial summary judgment under Rule 56, Fed. R.Civ.P., wherein it seeks a ruling that Daytona acquired no rights to the trademark "Migi" from any alleged predecessor in interest. For the reasons set forth below, the motion will be granted.

Rule 56(c) Fed.R.Civ.P. provides in its pertinent part as follows:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

All of the following facts are derived from allegations made by the plaintiff in its complaint, admissions made by the plaintiff in its reply to the defendant's counterclaim, statements made by plaintiff in its answers to interrogatories, and admissions made by one LaVerne J. Martincic, the president and owner of all of the stock of Daytona and its alleged predecessor in interest to the trademark "Migi." Since the defendant has admitted these facts for the purposes of its motion, there is no genuine issue as to any of them, and, while the plaintiff has filed an affidavit in opposition to the defendant's motion for summary judgment, as we conclude later herein, the factual assertions in that affidavit, assuming the truth thereof, would not alter our ruling, therefore there is no genuine issue as to any material fact.

Daytona was incorporated under Florida law on or about April 9, 1976. Its president and the owner of all of its stock is one LaVerne J. Martincic. Notwithstanding its non-existence prior to April 9, 1976, Daytona alleges in its complaint that prior to and since April, 1975, it has continuously adopted and used the name or mark "Migi." This right antedating Daytona's existence is based on an alleged use of the mark by its former owner, plaintiff's assignor, dating back to at least April, 1975, and a "tack-on" right back to that date by virtue of the assignment from the owner. The predecessor from whom Daytona contends it acquired ownership of the trademark "Migi" is LaVerne J. Martincic who purported to assign that trademark to Daytona by a document which she executed on or about April 9, 1976. Daytona admits that at the time LaVerne J. Martincic executed the assignment she deemed herself to be the owner of the trademark "Migi" and contends that its predecessor first used the mark "Migi" prior to April, 1975, by displaying that mark on a piece of printed advertising literature and thereafter by displaying the mark on a tape attached to the fire wall of each MG–TD replica automobile body that was sold and on the invoices therefor. However, plaintiff also admits that this printed literature bearing the mark "Migi" was ordered and paid for by Martin Enterprises, Inc., an Ohio corporation wholly owned by Joseph Martincic, LaVerne J. Martincic's husband.

---

1. The trademark "Migi" is used by both parties to this action on a fiberglass replica automobile body of the MG–TD automobile. This replica is sold in kit form to be used in converting the body of a certain small car to that of the British-made MG–TD, an automobile classic.

Plaintiff further admits that by May, 1975, Martin Enterprises, Inc. had gone out of business and LaVerne J. Martincic was working for defendant in Bridgeville, Pennsylvania.

Daytona has further admitted that LaVerne J. Martincic *personally* never conducted any business in Ohio prior to May, 1975, and that during the period April 1, 1975, up to April 9, 1976, there are no records indicating that LaVerne J. Martincic conducted any business (other than her participation in Fiberfab's business) which used the trademark "Migi" and that there are no invoices of any date reflecting any sale by LaVerne J. Martincic *personally* of an MG–TD replica automobile body. Finally, Daytona admits that Daytona, as Daytona, first used the trademark "Migi" on MG–TD replica automobile bodies shortly after April 9, 1976.

From the foregoing, it is clear that at no time did LaVerne J. Martincic as an *individual* conduct any business in which she utilized the trade name "Migi" as an appurtenance thereof. Nor is there any genuine issue as to any fact upon which that conclusion is based.

The principles of trademark law which govern our disposition of the defendant's motion are well settled. In the landmark case of *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918), Mr. Justice Pitney speaking for the Court stated:

> "There is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed. The law of trade-marks is but a part of the broader law of unfair competition; the right to a particular mark grows out of its use, not its mere adoption; its function is simply to designate the goods as the product of a *particular trader* and to protect his good will against the sale of another's product as his; and it is not the subject of property except in *connection with an existing business.*" (emphasis supplied).

In 1960 the D.C. Circuit held in *Rogers v. Ercona Camera Corporation* at 107 U.S. App.D.C. 295, 298, 277 F.2d 94, 97 as follows:

> "We take it as settled that ownership rights in a trademark in the United States, in the case of private persons, exist only as an appurtenance to a manufacturing or marketing business conducted in the United States in which the mark is used. . . . As we stated in *Watson v. E. Leitz, Inc.*, 1958, 103 U.S. App.D.C. 74, 77, 254 F.2d 777, 780:
> 'A trademark must be appurtenant to some enterprise which is related to the marketing of goods. It is both philosophically and legally impossible for it to exist in gross. But a merchant as well as a manufacturer may have a trademark.'"

In support of its motion, the defendant filed a brief and an extensive well-indexed appendix in which it cited the specific documents in which the admissions or contentions of the plaintiff previously set forth herein appeared and upon which the defendant was relying in support of its motion.

In its reply thereto the plaintiff did not attempt to dispute those foregoing facts or to suggest that there was any genuine issue as to any of them. Instead, plaintiff filed an affidavit of LaVerne J. Martincic consisting of thirteen numbered paragraphs. We find however, that none of the averments contained in the affidavit of Mrs. Martincic create a factual issue which is material to our determination of the motion before us. More specifically, Mrs. Martincic avers that she was an integral part of the Martin Enterprises, Inc. business operation which apparently used the trade name "Migi" as an appurtenance thereof at least as early as April, 1975; that she was directly involved in the design, development, manufacture and sale of "Migi" bodies and "Migi" parts manufactured and/or sold by Martin Enterprises, Inc.; that in fact her name appeared on each and every "Migi" body manufactured during all times pertinent hereto as well as on the main body molds used to make the bodies; that the

molds built for the manufacturer of the "Migi" bodies by Martin Enterprises, Inc. were all done under "special arrangement with LaVerne J. Martincic"; that "LaVerne J. Martincic personally designed, edited, and directly ordered the printing of the first promotional literature for her product/trademark "Migi"; that she was the ". . . originator of the unique use of the design, the concept and trademark "Migi" and was the moving force behind the development of the "Migi"; and that LaVerne J. Martincic personally directed and physically assisted in the creation of the molds used to manufacture the "Migi" fiberglass body parts. It is clear, however, these averments do not form the bases of an issue that LaVerne J. Martincic *individually* was the owner of a business which utilized the trade name "Migi" as an appurtenance thereto, but rather, in summary, was closely associated with a corporation owned by her husband which so utilized that trademark, albeit, perhaps, a mark conceived by her and used by the corporation with her permission. Absent her use of the mark in her individual business, however, she had no ownership interest in that *trademark* which she could assign.

In *Smith v. Coahoma Chemical Company*, 264 F.2d 916, 46 CCPA 801 (1959) the fact situation was quite similar to the instant case in that an individual, one Mr. Smith, had registered two trademarks in his own name based on an application in which Smith alleged ownership and use of the trademarks by him as an individual. The plaintiff sought to have the registration cancelled on the ground that Mr. Smith did not qualify as the owner of the trademarks since he never in fact used them in his own individual business but rather permitted their use by corporations of which he was a stockholder. The court stated with regard to one of the trademarks in affirming the decision of the Commissioner of Patents ordering the cancelation of both of them that:

> "While it is alleged by Smith that he owned the mark and authorized its use by the General Insecticide companies, it was properly pointed out by the Assistant

Commissioner that ownership of a mark must be derived *from use rather than from a conception* of the idea of the mark. Accordingly, assuming that Smith originated the idea of the 'Black Panther' mark and authorized its use by one or both of the companies, those facts would not vest ownership of the mark in him as an *individual.*" (emphasis supplied).

The *Coahoma Chemical* rule was applied by the Trademark Trial and Appeal Board in *Welscraft v. Dougherty*, 164 USPQ 31 (T.T.A.D.1969).

Finally plaintiff argues, vaguely and without citation of authorities, that with regard to the stock of Martin Enterprises, Inc., an Ohio corporation, we should note ". . . that Ohio is a community property state. . . . " However, even if we assume the best for plaintiff from this; i. e., that LaVerne J. Martincic was co-owner of the stock of the corporation which owned the trademark "Migi," this would not establish an ownership interest in the trademark utilized by the corporation in LaVerne J. Martincic as an *individual* unless somehow it would appear that she was one and the same as the corporation. And there is certainly no suggestion anywhere in the pleadings, affidavits, or briefs for that matter, that this could be the fact. As the court stated in the *Coahoma Chemical* case at p. 920

> "Smith testified that he was a 'principal' and 'controlling' stockholder, but the actual percentage of stock owned by him was not shown. Certainly it has not been established that his ownership was so complete that he and the corporation equitably constituted a single entity.
>
> We are of the opinion Smith's failure to use either of the registered marks is fatal to the validity of the registrations . . ."

The motion for partial summary judgment will be granted.