EL SOMBRERO CORPORATION, Plaintiff-Appellee, *v.* MIKE BOLIVAR, Defendant-Appellant.

Fourth District    No. 17620

Opinion filed June 3, 1982.

Sorling, Northrup, Hanna, Cullen, & Cochran, Ltd., of Springfield (R. Gerald Barris and Elizabeth A. Evans, of counsel), for appellant.

Leahy & Leahy, of Springfield, and John J. Zimmermann, of Mt. Prospect (Mary Lee Leahy and Andrew J. Leahy, of counsel), for appellee.

JUSTICE TRAPP delivered the opinion of the court:

Defendant Mike Bolivar appeals from a judgment of the circuit court of Sangamon County which cancelled a service mark registration issued to Bolivar and declared plaintiff the owner of the mark at issue. We affirm the order of the trial court granting plaintiff summary judgment.

The facts relevant to the ownership of the disputed service mark "El Sombrero" reflect that in 1974 defendant and one Leo Enriquez formed a corporation known as "El Sombrero" to operate a restaurant in Des Plaines. Defendant, who had emigrated from Mexico in 1965, was employed as the chief cook of the restaurant. Prior to the corporation's formation, defendant had conceived of the logo "El Sombrero" and had paid $600 to an artist to design a picture of a sombrero with a Mexican man and woman embracing beside it, and the words "El Sombrero" on the picture. The original El Sombrero corporation used this logo on restaurant menus, cards, and the corporate checking account. Within the first year of the original El Sombrero's existence, Robert Vasquez, who became the principal stockholder of the plaintiff corporation, purchased a one-third interest therein and became co-owner with Boliver and Enriquez. Several months later, Vasquez and defendant purchased Enriquez's one-third, each becoming one-half owners of the corporation's stock.

In 1977, defendant and Vasquez sold the assets of the El Sombrero Restaurant and subsequently dissolved the original corporation. The proceeds of the sale were reinvested by defendant and Vasquez in a new restaurant operated in Mount Prospect, Illinois, and a new corporation, G.B.M., Ltd., was chartered as the instrumentality of operation for this business. After some dispute as to the respective interests of the parties in G.B.M., Ltd., Vasquez ended up with a 70% interest along with his wife, and Bolivar the remainder. This new restaurant also operated under the name "El Sombrero" and used the logo on business supplies and accounts.

In February of 1978, defendant applied to the Secretary of State of the State of Illinois for the issuance of a certificate of registration for this service mark pursuant to section 3 of "An Act to provide for the registration and protection of trade-marks, service marks and trade-names * * *" (hereinafter Act) (Ill. Rev. Stat. 1979, ch. 140, par. 10). The registration application sworn to by Bolivar stated, in part:

"In compliance with the requirements of an Act of the General Assembly entitled 'An Act to Provide for the Registration and Protection of Trade-Marks, Service Marks and Trade names, etc.'

* * * the undersigned applicant has adopted and is using a mark in this State for the purposes provided in said Act * * *."

The certificate of registration was issued to Bolivar on March 24, 1978. There is no dispute between the parties, however, that it was the original El Sombrero Corporation that had first adopted and used the mark and that at the time of the registration it was the G.B.M., Ltd., corporation which had adopted and was using the mark.

In 1979, Boliver sold his 30% interest to Vasquez, not mentioning to him the fact of the registration of the mark in his name. According to Vasquez, the rights to the service mark were never discussed at the time of the sale. Subsequently, G.B.M., Ltd., amended its corporate charter to commence operations as the El Sombrero Corporation. In the same year Bolivar was convicted of a criminal offense and sentenced to a short term of incarceration, but before he commenced to serve the sentence, he contributed $73,000 to a Mexican restaurant in Park Forest, Illinois, operated by Manuel's, Inc. This restaurant presently operates under the name "El Sombrero" and uses that name on its menus and on a sign advertising the restaurant.

The complaint for declaratory judgment filed in the instant cause by plaintiff prayed for the cancellation of the defendant's certificate of registration and a declaration that plaintiff was the owner of the service mark. In the complaint, plaintiff alleged that defendant was not using the mark at the time the application was filed; that the allegation in the application for registration, to wit: "That no other person has the right, in the State of Illinois to use such mark in the identical form * * *," was false and known to be so at the time of the registration. Following the defendant's responses to questions at a discovery deposition, plaintiff moved for summary judgment to cancel the mark on the ground that the registrant had not used the mark prior to application for certification. On November 5, 1981, the trial court granted plaintiff's motion for summary judgment declaring the mark was fraudulently issued, cancelling the same, and decreeing plaintiff to be the owner thereof.

We first address Bolivar's contention that the trial court erred in cancelling his service mark. In ruling on a motion for summary judgment, it is fundamental that the motion should be granted only when the pleadings, depositions, and admissions, together with any affidavits, show that there is no genuine issue as to material fact, and that the movant is entitled to the judgment as a matter of law. (Ill. Rev. Stat. 1979, ch. 110, par. 57.) Viewed in the light of this standard, we hold that the trial court correctly granted plaintiff's motion for summary judgment.

■■ Ownership of a service mark is acquired by the adoption and use of the mark in the individual's or entity's business. (See *Estate of Presley v.*

*Russen* (D. N.J. 1981), 513 F. Supp. 1339; 3 Callmann, The Law of Unfair Competition, Trademarks and Monopolies secs. 68.1, 76.1 (3d ed. 1969); Ill. Rev. Stat. 1979, ch. 140, par. 8(a).) The function of a mark is to identify the business in which it is used and to protect the goodwill which is symbolized by the mark. (*General Baking Co. v. Goldblatt Bros., Inc.* (7th Cir. 1937), 90 F. 2d 241.) Unlike a trademark whose purpose is to identify the origin and quality of a particular item, the service mark is used primarily as a guarantee of identity of services.

■■ Once ownership has been established, the mark can be registered under both Federal law (15 U.S.C. secs. 1051 through 1127 (1976)) and State law (Ill. Rev. Stat. 1979, ch. 140, par. 10). Thus, one of the threshold requirements for registration under the Illinois Act is the necessity of adoption and use of the mark by the applicant. Section 3 of the Act provides in part:

> "Subject to the limitations set forth in this Act any person who adopts and uses a mark in this State may file in the Office of the Secretary of State * * * an application for registration of that mark * * *." (Ill. Rev. Stat. 1979, ch. 140, par. 10.)

Under the Act, a service mark is defined as "anything adopted and used by a person to identify services rendered by him or with his authorization and which distinguishes them from services rendered by others." (Ill. Rev. Stat. 1979, ch. 140, par. 8(a).) A person under the Act includes an individual, firm, partnership, corporation, association, union, or other organization. Ill. Rev. Stat. 1979, ch. 140, par. 8(b).

■■ At the time of the registration of the service mark and prior thereto, the record is clear that Bolivar, individually, had never adopted and used the trademark in a business of his own. Rather, the mark was created in 1974 and initially used by the first El Sombrero corporation of which Bolivar and Enriquez were shareholders. This lack of personal use and adoption by the defendant was the primary point advanced by plaintiff in its summary judgment motion and formed a part of the basis of the trial court's order of cancellation.

Pursuant to section 9 of the Act (Ill. Rev. Stat. 1979, ch. 140, par. 16), the Secretary of State is required to cancel any registration concerning which the circuit court finds, *inter alia*, that the registrant is not the owner of the mark, that the registration was granted contrary to the Act, or that the registration was obtained fraudulently. Though the circuit court premised its conclusion on the ground of fraud, it also found two additional reasons for its order. We choose not to affirm on the issue of the fraudulent procurement, but find ample reasons to affirm the judgment below, most significantly the defendant's lack of ownership of the mark and its certification contrary to the Act.

Defendant argues we should disregard the fact of the original cor-

poration's use inasmuch as the original corporation was owned by only two shareholders and not by numerous individuals. Defendant believes we should treat the corporation's use of the service mark as his use.

Defendant has not produced any authority for this position, and in the three cases we have discovered, all held contrary on precisely the same issue. (See *Daytona Automotive Fiberglass v. Fiberfab, Inc.* (W.D. Pa. 1979), 475 F. Supp. 33; *Smith v. Coahoma Chemical Co.* (C.C.P.A. 1959), 264 F.2d 916; *Welscraft, Inc. v. Dougherty* (1969), 164 U.S.P.Q. 31 (BNA).) All of these cases held that the use of a trademark in its business by a corporation held substantially by the registrant did not inure to the individual registrant's benefit. These cases obviously are not controlling, but we believe the rule established to be persuasive. Defendant and the initial El Sombrero Corporation were not a single entity, and the goodwill developed and protected by this mark cannot be traced solely to him. To pierce the corporate veil used by Bolivar and treat its business as that of Bolivar disregards not only the terms of the Act requiring use by the *applicant*, but also ignores the function of the mark as an indicator of origin. Bolivar may have been responsible for developing the goodwill attributable to the original corporation, but this responsibility was shared by other individuals. We believe the trial court was correct in granting plaintiff's motion for summary judgment and cancelling the certificate of registration for the trademark issued in defendant's name.

The second issue defendant raises regarding the ownership of the mark and the trial court's declaration thereof was correctly decided by the trial judge. There is no dispute that El Sombrero, Inc., formerly G.B.M., Ltd., had adopted and was using the name in connection with its business in Mount Prospect and that such adoption and use confers ownership rights to the mark. (See *Estate of Presley*; Callmann; Ill. Rev. Stat. 1979, ch. 140, par. 8(a).) Defendant's argument that he had merely assigned his rights to G.B.M., Ltd., and his citation of authority to cases involving assignment and transfer are irrelevant since, as we have indicated, defendant had no interest to assign.

For the foregoing reasons, the order of the trial court granting plaintiff summary judgment on its complaint seeking the cancellation of the mark and a declaration of ownership is affirmed.

Affirmed.

GREEN, P. J., and WEBBER, J., concur.