**PLITT THEATRES, INC., a Delaware corporation, Plaintiff,**

v.

**AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, as Trustee under Trust Agreement dated December 1, 1977, and known as Trust No. 41979, and 58 East Oak Partnership, an Illinois partnership, Defendants.**

No. 88 C 4718.

United States District Court, N.D. Illinois, E.D.

Oct. 24, 1988.

David G. Lynch, Mark I. Feldman, Keith W. Medansky, Rudnick & Wolfe, Chicago, Ill., for plaintiff.

Floyd A. Mandell, Kirk T. Hartley, Deborah A. Borrowdale, Katten Muchin & Zavis, David S. Heller, Mindy B. Gordon, Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, David W. Ruttenberg, Ruttenberg & Ruttenberg, Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

The controversy in this case concerns whether plaintiff or defendants are entitled to use the service marks "Esquire" and "Esquire Theatre" in conjunction with the operation of a motion picture theatre business in downtown Chicago. Plaintiff, Plitt Theatres, Inc. ("Plitt") has filed a complaint against American National Bank and Trust Company of Chicago and 58 East Oak Partnership ("defendants") seeking to permanently enjoin defendants from using the marks. Defendants have counterclaimed, requesting a similar injunction against Plitt. At this juncture, both Plitt

and defendants have moved for a preliminary injunction. For the reasons stated herein, defendants' motion for a preliminary injunction is granted. Plitt's motion is denied.

## FACTS [1]

In 1938, a theatre building was constructed at 58 East Oak Street in Chicago, Illinois. Part of the original construction included a marquee and a vertical sign containing the name "Esquire," which has remained on the facade of the building to date. For the last 50 years, various parties have operated a motion picture theatre business at this building using the "Esquire" name.

Both Plitt's and defendants' ownership claims to the "Esquire" and "Esquire Theatre" marks derive out of their respective interests in the building at 58 East Oak. Plitt acquired its interest in the premises through an assignment of a lease of the premises dated March 31, 1966. The lease was signed by Cinema–Oak, Inc., as landlord, and Esquire Theatres, Inc., as tenant. The lease provided that Esquire Theatres, Inc., agreed to use and occupy the building only as an indoor motion picture theatre and as an auditorium for other public presentations and entertainment. On December 24, 1975, Esquire Theatres, Inc., assigned all of its rights and interest under the lease to Plitt.

Defendants acquired their interests in the premises in January 1978. Through several conveyances, Cinema–Oak transferred title to the premises to defendants. As owners, defendants acquired Cinema–Oak's interest in the lease. Therefore, defendants were Plitt's landlords from January 1978 until January 24, 1988, when defendants terminated the lease.

During the period Plitt occupied the building, Plitt operated a first-run motion picture theatre business. Plitt also installed signs on the marquee which read "Plitt Esquire Theatre." In addition, according to the sworn affidavit submitted by Plitt's vice president, Irwin Cohen, Plitt spent at least one million dollars promoting and advertising the mark "Esquire" and the services sold thereunder.

In September 1986, defendants notified Plitt that they would be terminating the lease because the building at 58 East Oak was being demolished. In accordance with that notice, the lease was terminated in January 1988. The next month, defendants announced their plans to operate new movie theatres at the reconstructed premises under a management agreement with M & R Theatres, Inc.[2] Defendants have affirmed their intent to use the marks "Esquire" and "Esquire Theatre" in connection with their new theatres, which they estimate will be ready to open in late 1988 or early 1989. Defendants have begun pro-

1. The parties have entered into a written stipulation regarding some of the facts. In addition, the court receives into evidence three exhibits offered by defendants not included in the parties' stipulation. The first exhibit consists of copies of newspaper advertisements from the '40s, '50s, and '60s promoting the Esquire Theatre. The second is a copy of an article on the Esquire Theatre contained in the April 1938 issue of *Architectural Forum* magazine. Both of these exhibits are self-authenticating under Rule 902(6) of the Federal Rules of Evidence. The facts contained therein are admissible as an exception to the hearsay rule. Fed.R.Evid. 803(16). *See Bell v. Combined Registry Company,* 397 F.Supp. 1241, 1246–47 (N.D.Ill.1975), *aff'd,* 536 F.2d 164 (7th Cir.1976). The third exhibit consists of a report and letters generated by the Commission on Chicago Historical and Architectural Landmarks concerning the Esquire Theatre. This exhibit also is a self-authenticating document which contains admissible material. Fed.R.Evid. 902(5) & 803(24).

2. On February 19, 1988, Plitt filed a complaint in the Circuit Court of Cook County, Illinois, alleging that the management agreement violated Plitt's rights under an amendment to the lease. Plitt asserted that the amendment gave Plitt a "right of first refusal" which prohibits defendants from entering into their agreement with M & R. Plitt's action seeks specific performance of Plitt's alleged right of first refusal, which would allow Plitt to continue to operate the theatre at 58 East Oak. Currently, Plitt is appealing the Circuit Court's denial of Plitt's motion for a preliminary injunction against defendants.

Regardless of the outcome of Plitt's state court action, whether Plitt had any right of first refusal is irrelevant to this case. As the parties have agreed, the dispute here concerns the rights of the parties with respect to the trademarks or service marks "Esquire" and "Esquire Theatre."

moting the theatre under the "Esquire" name and have indicated their intent to continue to do so. Defendants also confirm that they plan to continue to display the original marquee and sign outside the theatre which contain the name "Esquire." [3]

Meanwhile, Plitt also intends to operate a theatre under the "Esquire" name. In September 1988, Plitt opened up theatres at 900 North Michigan Avenue in Chicago, just one block away from 58 East Oak Street. Plitt intends to promote and operate these theatres under the "Esquire" name.[4] It is this undesirable prospect of having two theatres named "Esquire" only one block apart which has brought the parties to court.

## DISCUSSION

The decision to grant a preliminary injunction is within the trial court's discretion. *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 390–91 (7th Cir.1984). In deciding whether to issue a preliminary injunction, this court must consider the following factors: (1) whether there is an adequate remedy at law (that is, whether the interim harm caused by the activity to be enjoined can be completely offset by a subsequent award of damages or other legal relief); (2) whether any such irreparable harm caused by a failure to enjoin the activity outweighs any irreparable harm caused by the injunction; (3) whether the party seeking the injunction has a likelihood of success on the merits; and (4) whether granting the injunction would disserve the public interest. *Maxim's Limited v. Badonsky*, 772 F.2d 388, 390 (7th Cir.1985).

In the instant case, the parties agree that an examination of these factors shows that this case is appropriate for preliminary injunctive relief. First, both agree that the party which is the rightful owner of the "Esquire" mark has no adequate remedy at law and will be irreparably harmed if the court does not issue an injunction against the infringing party. The infringer would irreparably harm the rightful owner by trading off on the goodwill associated with the mark. The infringer's unlawful use of the mark would dilute the mark by creating confusion among consumers. In addition, the unlawful use would divert customers from the rightful owner to the infringer. Both the amount of damage to the goodwill associated with the mark and the amount of money damages caused by lost customers are difficult if not impossible to quantify. Therefore, there is no adequate legal remedy. *See Hyatt Corp. v. Hyatt Legal Services*, 736 F.2d 1153, 1158–59 (7th Cir.), *cert. denied*, 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 361 (1984); *Wesley–Jessen Division of Schering Corp. v. Bausch & Lomb, Inc.*, 698 F.2d 862, 867 (7th Cir.1983).

Secondly, the balance of hardships in this case clearly weighs in favor of the rightful owner of the mark. There are no extraordinary circumstances which would tip the balance in favor of the infringer. Thus, the balance of hardships favors granting a preliminary injunction to the rightful owner.

With respect to the fourth factor, the court finds that injunctive relief would not disserve the public interest. On the contrary, the public would be served by eliminating confusion in the market. *Wesley–Jessen*, 698 F.2d at 868. Thus, consideration of the public interest also indicates preliminary injunctive relief is appropriate.

■ The final factor which this court must consider before granting preliminary injunctive relief is each party's likelihood of

---

**3.** The Commission on Chicago Historical and Architectural Landmarks has recommended to the Mayor and City Council of Chicago that the premises at 58 East Oak be designated as an official Chicago landmark, with the designation being limited to the Oak Street facade containing the marquee.

**4.** Defendants point out that Plitt has promoted and advertised its new theatres as the "900 N. Michigan Cinemas," not the "Esquire Theatre(s)." The court does not view this as any indication that Plitt has abandoned its alleged rights to the "Esquire" mark. Rather, Plitt merely chose to proceed cautiously until the resolution of the cross-motions for preliminary injunction currently before the court. Given the outcome of these motions, Plitt's caution can be viewed as a prudent business decision.

success on the merits of its claims. The degree of likelihood required before the court will grant such relief varies depending on the balancing of the other factors. *Maxim's Limited,* 772 F.2d at 391. However, no matter how the other factors are balanced, a party must show at least *some* reasonable likelihood of success on the merits of its claims before it will be granted preliminary injunctive relief. *Id.*

In the instant case, both Plitt and defendants assert claims of unfair competition and trademark infringement.[5] Generally, to establish a likelihood of prevailing on these claims, each party must show that it owns the trademark or service mark in question and that the other party's unlawful use of the mark causes a likelihood of confusion or mistake among consumers.[6] *Schutt Manufacturing Co. v. Riddell, Inc.,* 673 F.2d 202, 206 (7th Cir.1982); *James Burrough, Ltd. v. Sign of the Beefeater, Inc.,* 540 F.2d 266, 274 n. 16 (7th Cir.1976). *See also Thompson v. Spring–Green Lawn Care,* 126 Ill.App.3d 99, 105, 81 Ill.Dec. 202, 208, 466 N.E.2d 1004, 1010 (1984). The parties agree that their dual use of the marks "Esquire" and "Esquire Theatre" would cause consumer confusion. However, both Plitt and defendants claim exclusive ownership rights to the "Esquire" mark. Therefore, each believes that it alone can establish the likelihood of success on the merits that warrants preliminary injunctive relief. Consequently, the determination of whether Plitt or defendants are entitled to a preliminary injunction turns solely on the issue of who is more likely to establish ownership of the "Esquire" mark.

Under well-established law, ownership of a service mark or trademark is acquired by adoption and prior and continuous use of the mark. *Armstrong Co. v. Nu–Enamel Corp.,* 305 U.S. 315, 334, 59 S.Ct. 191, 200,

83 L.Ed. 195 (1938); *Hydro–Dynamics, Inc. v. George Putnam & Co., Inc.,* 811 F.2d 1470, 1473 (Fed.Cir.1987); *Thompson v. Spring–Green Lawn Care,* 126 Ill. App.3d 99, 109, 81 Ill.Dec. 202, 211, 466 N.E.2d 1004, 1013 (1984); *El Sombrero Corp. v. Bolivar,* 106 Ill.App.3d 925, 927, 62 Ill.Dec. 707, 709, 436 N.E.2d 733, 735 (1982). Registration of a service mark does not create any substantive rights to the mark.[7] *Armstrong,* 305 U.S. at 334, 59 S.Ct. at 200; *Mars, Inc. v. Curtiss Candy Co.,* 8 Ill.App.3d 338, 290 N.E.2d 701, (1972).

Plitt relies on implications which it draws from various facts to try to establish its prior use and adoption of the "Esquire" mark. Plitt points out that neither Plitt nor defendants had any right to the mark prior to acquiring an interest in the theatre at 58 East Oak. Also, the documents by which the parties received their respective interests in the building do not purport to expressly convey any rights to the mark. Therefore, argues Plitt, ownership of the mark must be determined from what occurred after the parties acquired their interests in the theatre. According to Plitt, numerous factual circumstances, including the language of the lease, the parties' conduct, and consumer perception demonstrate that Plitt has adopted and used the "Esquire" mark, while defendants have not.

The court, however, finds that neither the facts nor the inferences Plitt draws from them establish Plitt's ownership of the "Esquire" mark. Instead, both the facts and law establish that ownership of the mark was transferred to defendants at the time defendants acquired their interests in the Esquire Theatre building.

■ Ownership of trademarks and service marks passes impliedly with ownership

---

5. The parties also bring claims of deceptive business and trade practices and consumer fraud.

6. The test is generally the same for deceptive practices claims as well. *See Bonner v. Westbound Records, Inc.,* 49 Ill.App.3d 543, 7 Ill.Dec. 409, 413, 364 N.E.2d 570, 574 (1977).

7. Thus, Plitt's Illinois service mark registration of the "Esquire" mark, which was granted by the Illinois Secretary of State on March 17, 1988, does not establish any ownership rights to the mark in Plitt. In its memorandum, Plitt acknowledges that fact, stating, "Plitt does not rely on its registration of the mark; rather, it relies on its common law rights created through use."

of the pertinent building or business with which the mark is associated, absent express provision to the contrary. *See Thompson*, 129 Ill.App.3d at 109, 81 Ill. Dec. at 211, 466 N.E.2d at 1013; 3 R. Callman, The Law of Unfair Competition, Trademarks and Monopolies, § 19.43 at 19–191 (4th ed. 1983); 1 J. McCarthy, Trademarks and Unfair Competition, § 18.12 at 825 (2d ed. 1984). *See also New York Life Insurance Co. v. Orpheum Theatre & Realty Co.*, 100 Wash. 573, 171 P. 534 (1918). Under this rule, each successive owner of the Esquire Theatre, beginning with the original owners, who established the "Esquire" mark, transferred the ownership rights in the mark to its buyer when selling the building. Through this chain, rights to the "Esquire" mark eventually passed down to Cinema–Oak, Inc. Ownership of the mark then passed from Cinema–Oak to defendants with the sale of the building in January 1978. Transfer of ownership of the "Esquire" mark occurred even though the documents evidencing the transfer of the theatre were silent with respect to the mark. *Id.*

Plitt's arguments do not show that this chain of ownership of the mark was ever broken. The court rejects Plitt's apparent argument that Cinema–Oak, by leasing the premises to the "Esquire Theatre, Inc.," or defendants, by allowing Plitt to distribute advertisements and erect signs proclaiming "Plitt's Esquire Theatre," somehow abandoned or surrendered its right to the mark. To prove abandonment, a party must show intent to abandon. *Skippy, Inc. v. CPC International, Inc.*, 674 F.2d 209, 216 (4th Cir.), *cert. denied*, 459 U.S. 969, 103 S.Ct. 298, 74 L.Ed.2d 280 (1982); *Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1043–44 (2d Cir.1980). Plitt has not produced sufficient proof of intent to abandon the mark.

■ The court also rejects Plitt's contention that defendants, or any of their predecessors, lost rights to the mark by failing to use the mark. Plitt claims defendants did not "use" the mark because they simply leased the theatre and did not actually operate a theatre business in the building. However, Plitt cites no authority for its narrow interpretation of the use requirement, and the court finds that such an interpretation is not warranted. Defendants used the mark in connection with the management of the theatre building. The mere fact that they chose to lease instead of occupy and operate the theatre building does not show that they failed to use the "Esquire" mark. Moreover, Plitt's suggestion that defendants abandoned their rights to the mark by failing to control Plitt's use of the mark also is without merit. Defendants' management of the theatre building included exercising their rights under the lease to inspect and control Plitt's use of the building.[8] Therefore, defendants did not permit uncontrolled use of the mark.

Finally, the court dismisses Plitt's argument that consumers' association of the "Esquire" mark with Plitt, and not defendants, demonstrates that defendants have lost their rights to the mark. There is absolutely no evidence that consumers associate the mark with Plitt's services rather than defendants' theatre building, which has been called "Esquire" for 50 years. Plitt claims proof of its extensive advertising is sufficient to establish consumer perception. However, it is proof of the *effect* of that advertising which is required. *See Walt–West Enterprises, Inc. v. Gannett Co., Inc.*, 695 F.2d 1050, 1061 (7th Cir. 1982). Plitt offers no such proof.

As a result of Plitt's inability to demonstrate a break in the chain of ownership of the mark from one theatre owner to the next, Plitt's ownership claim to the mark fails. The facts on which Plitt relies to support its arguments that it owns the mark do not establish in Plitt any permanent ownership rights to the mark. Rather, these facts simply are consistent with Plitt's implied right to use the mark during its tenancy. As other courts have recog-

8. One of the beneficiaries of the trust agreement under which the Esquire Theatre is the trust res, David Ruttenberg, submitted a sworn affidavit in which he stated that he made periodic inspections of the building to ensure that Plitt was operating the theatre in accordance with the restrictions contained in the lease.

nized, a tenant's implied right to use a mark under such circumstances terminates when his lease terminates. For example, in *G.M.P. v. Moskowitz*, 223 F.Supp. 295 (D.D.C.1963), the defendant had for years leased space within the Alban Towers Hotel to operate a drug store called the "Alban Towers Pharmacy." When the lease ended, defendant attempted to open up a drug store outside the hotel under the same name. The court enjoined defendant from naming his store the "Alban Towers Pharmacy." Similarly, in *Rosenberg v. Silinsky*, 12 Cal.App.3d 268, 90 Cal.Rptr. 548 (1970), the court held that the defendant-tenant's rights to use his landlord's mark ceased at the termination of the lease. In *Rosenberg*, defendant leased premises from plaintiffs, owners of "The Hub Liquor," so that defendant could operate a pharmacy under the name, "The Hub Medical Pharmacy." Six years later, defendant moved to a nearby building and began operating his pharmacy business under the "Hub" name. The court granted plaintiff's request for an injunction preventing defendant from using the "Hub" name. The court found that defendant had not acquired rights to the mark by implication. *See also New York Life Insurance Co. v. Orpheum Theatre & Realty Co.*, 100 Wash. 573, 171 P. 534 (1918) (former tenant of Orpheum Theatre enjoined from using Orpheum name in connection with the operation of another theatre after his lease expired); 3 R. Callman, *supra*, § 19.43 at 19–191 (lessee's license to use lessor's trademark presumed to terminate at end of lease).

Therefore, Plitt did not acquire any permanent rights in the "Esquire" mark during its tenancy at the Esquire Theatre building on 58 East Oak Street. Plitt merely had an implied right to use the mark, which ended at the termination of the lease.

### CONCLUSION

For the foregoing reasons, the court finds that defendants are entitled to preliminary injunctive relief. Defendants have demonstrated that they are likely to succeed on the merits because of their strong showing that, as between these parties, they own the "Esquire" and "Esquire Theatre" marks. In addition, defendants have met all of the other requirements for preliminary injunctive relief. Therefore, the court hereby orders that Plitt is preliminarily enjoined from using the name "Esquire" or "Esquire Theatre," or any colorable imitation thereof, in connection with the operation of a motion picture theatre business or related services.

IT IS SO ORDERED.