DECISION.
Appellants, Deborah Stein, Denise Isaacs, and Diane Gingrich, appeal the summary judgment granted by the probate court in a dispute over whether several businesses should have been included in the estate of the decedent, Charles F. Mefford. The appellee, Carol A. Mefford, is Mr. Mefford's surviving spouse and the executrix of the estate. The appellants are the daughters of Mr. Mefford. For the reasons that follow, we hold that summary judgment was properly granted.
Mr. Mefford died on August 21, 1996. His last will and testament, executed on May 24, 1996, was admitted to probate on August 27, 1996. Item II of the will provides, "All the rest and residue of my property, whether real, personal, or mixed I give and bequeath to Carol A. Mefford, Successor Trustee, her successors and assigns under a trust dated May 24, 1996."[1]
For several years, Mr. Mefford had operated five answering services as sole proprietorships under the following names: Accurate Answering Service; Center Service; Meyer's Answering Service; Around the Clock Answering Service; and Telcenter. The primary assets of the answering services were intangible and consisted of the customer lists and goodwill.[2]
On June 25, 1996, Mr. Mefford, through counsel, filed articles of incorporation with the state of Ohio. The names of the new corporations were the same as the aforementioned businesses, except for the designation "Inc." after the titles. The trust instrument distributed fifty-one percent of the shares of these corporations to Mrs. Mefford. Forty-nine percent of the shares were distributed equally among the appellants.
The appellants conceded that, on the date of Mr. Mefford's death, the trust owned all of the stock of these corporations, and, for that reason, the shares were not a part of the estate. But the appellants argued that the corporations never conducted any business and did not represent incorporated forms of Mr. Mefford's businesses. Instead, they maintained that the sole proprietorships continued to operate beyond the creation of the corporations and beyond the death of Mr. Mefford. Accordingly, appellants filed their exception to the inventory because it did not include the sole proprietorships.
Following a period of discovery during which the appellants and Mrs. Mefford were deposed, Mrs. Mefford filed her motion for summary judgment as to the exception to the inventory.[3] Following a hearing, the probate court denied the exception and granted summary judgment in favor of Mrs. Mefford. The appellants now argue, in a single assignment of error, that the probate court erred by granting the motion for summary judgment. We are not persuaded.
Pursuant to Civ.R. 56(C), a motion for summary judgment is to be granted only when no genuine issue of material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and, with the evidence construed most strongly in favor of the nonmoving party, that conclusion is adverse to that party.[4]
The party moving for summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists, and once it has satisfied its burden, the nonmoving party must produce evidence on any issue for which that party would bear the burden of production at trial.[5] An appellate court reviews the record de novo to determine whether the party moving for summary judgment has met its burden.[6]
The Supreme Court of Ohio has explained the burden that Civ.R. 56 places upon the respective parties:
 [T]he moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.[7]
The appellants first maintain that the probate court erroneously found that the parties had stipulated below that Mr. Mefford had incorporated the sole proprietorships and, for that reason, its analysis came to an end because the proprietorships had ceased to exist by operation of law. While we agree that the appellants have always disputed that the proprietorships were incorporated, we hold that no prejudice was visited upon them, because the probate court's ultimate conclusion with respect to the issue was correct.
Mrs. Mefford supported her motion for summary judgment with evidence that Mr. Mefford had created corporations in the names of his previously existing sole proprietorships. The trust executed by Mr. Mefford indicated his intent to incorporate the businesses and to distribute the shares of the corporations as described above. As the probate court properly found, the corporations came into existence upon the filing of the articles of incorporation.[8]
Despite the fact that the corporations were formed under the same names as the sole proprietorships, with the addition of the designation "Inc.," the appellants contend that Mr. Mefford did not intend to incorporate the existing businesses. Rather, they maintain that he disdained governmental regulations and most likely filed the articles of incorporation in an effort to deceive Mrs. Mefford. In effect, the appellants claim that the drafting of the trust and the filing of the articles of incorporation were an elaborate ruse to placate Mrs. Mefford by inducing the belief that she had been granted controlling interests in the businesses.
But none of the appellants could point below to specific facts to support their theory that Mr. Mefford's actions had been a ruse. Instead, the appellants' claims were based upon mere speculation, conjecture, and their subjective beliefs concerning the intent of Mr. Mefford. The appellants conceded in their depositions that Mr. Mefford had not revealed his intentions to them, and that their beliefs concerning his intent were the product of their "gut feeling" that he wished the appellants to assume control of the companies. The probate court properly rejected such speculation as an insufficient basis to raise a genuine issue of material fact as to Mr. Mefford's intended disposition of the businesses.
The appellants further contend that Mr. Mefford's failure to rename the business bank accounts, to order new corporate stationery, and to obtain tax-identification numbers evinced his intent not to incorporate the answering services. We are not persuaded. The circumstances cited by the appellants were not sufficient to raise a genuine issue of fact, given that Mr. Mefford was in failing health and died two months after the articles of incorporation were filed. Thus, his failure to complete all of the details associated with incorporation did not negate his clear intent to incorporate the businesses, as expressed in the terms of the trust and in his filing of the articles of incorporation. More importantly, Mr. Mefford's failure to complete those details did not affect the legal status of the corporations, which, as noted above, came into being upon the filing of the articles.
Having held that the probate court was correct in concluding that the sole proprietorships had been incorporated, we must next address the issue of whether the intangible assets of the businesses were transferred to the corporations. The appellants emphasize that Mr. Mefford failed to take any affirmative steps to transfer the assets from the sole proprietorships to the respective corporate entities. Therefore, they argue that the corporations were in effect "shells" that owned no property. We disagree.
Although there is an apparent paucity of Ohio law on the precise issue of what steps are necessary to transfer intangible property from a sole proprietorship to a newly formed corporation, we find the law of other jurisdictions to be instructive. It has been held, for example, that an affirmative transfer of intangible assets to a successor entity is unnecessary. A concise overview of the law in this area is provided inAmerican Sleek Craft, Inc. v. Nescher[9]:
 The law presumes that when a business is conveyed, its trade name and goodwill are also conveyed. Plitt Theatres, Inc. v. American Nat'l Bank Trust Co., 697 F. Supp. 1031, 1034-35
(N.D.Ill. 1988) ("Ownership of trademarks and service marks passes impliedly with ownership of the pertinent building or business with which the mark is associated, absent express provision to the contrary."). The reason for the presumption is that "good will has no existence except in connection with a going business; it cannot be separated from the going business to which it is incident." Pfleghar Hardware Specialty Co. v. Blair, 30 F.2d 614, 616-17 (2nd Cir. 1929). "Unless there is evidence to the contrary, a trade name will be presumed to have passed, even in the absence of formal assignment, to one to whom the business has been transferred." Dovenmuehle v. Gilldorn Mortgage Midwest Corp., 670 F. Supp. 795, 798 (N.D.Ill. 1987), aff'd 871 F.2d 697 (7th Cir. 1989); see also 1 McCarthy, Trademarks and Unfair Competition § 18.12 (2d ed. 1984).
Thus, there is a presumption that the intangible assets of a sole proprietorship pass to the successor corporation. In the case at bar, the appellants point to no evidence (other than the absence of a formal assignment) indicating that the goodwill and other intangible assets of the sole proprietorships did not pass to the newly formed corporations. Rather, they rest their argument on the assertion that the sole proprietorships were never incorporated. For the reasons stated above, we hold that no genuine issue of material fact existed concerning the incorporation of the answering services. The goodwill and other intangible assets of the answering-service businesses therefore passed to the corporations and were properly excluded from the inventory of the estate. Under these circumstances, Mrs. Mefford was entitled to judgment as a matter of law. The assignment of error is overruled, and the judgment of the probate court is affirmed.
 ___________________ Hildebrandt, Presiding Judge.
 Painter and Shannon, JJ., concur.
Raymond E. Shannon, retired, of the First Appellate District, sitting by assignment.
[1] The trust instrument that is the center of this dispute was actually dated June 20, 1996.
[2] These intangible assets are the only property in dispute on appeal.
[3] The original inventory was filed on February 21, 1997. An amended inventory was filed on February 9, 1998.
[4] See State ex rel. Howard v. Ferreri (1994), 70 Ohio St.3d 587,589, 639 N.E.2d 1189, 1192.
[5] See Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108,570 N.E.2d 1095, paragraph three of the syllabus.
[6] See Wille v. Hunkar Laboratories, Inc. (1998), 132 Ohio App.3d 92,96, 724 N.E.2d 492, 495.
[7] Dresher v. Burt (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264,274. (Emphasis sic.)
[8] R.C. 1701.04(E); Thomas v. Columbus (1987), 39 Ohio App.3d 53,55, 528 N.E.2d 1274, 1276.
[9] (Bankr. Ct. Ariz. 1991), 131 B.R. 991, 996-997. See, also, Shunkv. Commr. of Internal Revenue (C.A.6, 1949), 173 F.2d 747, 750. ("The seller of a going business necessarily transfers its good will.")