MARTIN C. KOEBEL *et al.*

*v.*

THE CHICAGO LANDLORDS' PROTECTIVE BUREAU.

*Opinion filed June 23, 1904.*

1. TRADE NAMES—*fraud is the gist of action to enjoin use of generic or descriptive words.*    The use of generic or descriptive words in a trade name will not be enjoined except for actual fraud or fraud resulting from the tendency, of the similarity of the names, to lead third persons to believe the concerns are one and the same, even though they use ordinary care to discriminate between them.

2. SAME—*when use of descriptive words will be enjoined.*    The use of the words "Landlords' Protective Department" will be enjoined at the suit of an older concern incorporated under the name of the "Chicago Landlords' Protective Bureau," even though the defendant is not guilty of intentional fraud in adopting the trade name in question, where the similarity of names has resulted in embarrassment and injury to the complainant's business.

*Chicago Landlords' Pro. Bureau* v. *Koebel*, 112 Ill. App. 21, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

The Appellate Court for the First District reversed a decree of the superior court of Cook county which dismissed the bill of the Chicago Landlords' Protective Bureau against Martin C. Koebel and Frank O. Campe for an injunction and remanded the cause, with directions to the latter court to enter its decree granting the relief prayed.    To reverse that judgment of affirmance this appeal is prosecuted.

The bill was filed August 28, 1902, and sought to enjoin the defendants from using the trade name of the complainant by representing, pretending and claiming to be associated or connected with the complainant in any manner, and from circulating stationery, circulars, pamphlets and advertising matter upon which should be printed the title "Landlords' Protective Department,"

or any similar combination of words in which the words "Landlords' Protective" appear. Upon the filing of the bill a temporary injunction was granted, and on September 5 following, the defendants filed their answer, to which the complainant replied. The cause was heard on evidence produced in open court, and in November of the same year an order was entered dissolving the injunction and dismissing the bill.

The evidence showed the organization of the complainant on November 10, 1886, the object, as stated in its articles of incorporation, being: "The object of said corporation shall be to collect and compile the names of persons who have proven unsatisfactory and troublesome tenants and to have been a cause of vexation and expense to their landlords, and for general reference, use and information as to the status, payment of rent, care of property, and whether a desirable, good, bad or pestiferous tenant, and to publish and maintain a list of such renters for the information and protection of landlords and its patrons, and to aid and assist such landlords to recover possession of their property." The location of its principal office is stated to be "Chicago, Illinois." It has conducted the business for which it was incorporated ever since its incorporation. Its offices in Chicago are at 232 West Division street, 332 Blue Island avenue, 100 Washington street and 371 Larrabee street, the last being its main office. Its method of doing business is to sell to a person a membership in the corporation for the sum of $10, which membership entitles the purchaser thereof to the services of the corporation in collecting rents, evicting bad tenants and general care of his interest as a landlord. It also did business for persons not members, who, on payment to it of $5 each, became entitled to its services in evicting tenants. It expended, originally, in establishing its business, about $10,000, and spent yearly in advertising its business from $1000 to $2000. Its business is worth between $4000 and $5000

210—12

yearly, and at the time of the hearing it had done business for about seven thousand persons. The defendants are not incorporated. They inaugurated the Landlords' Protective Department on February 1, 1901. On the back of a printed pamphlet issued by appellees about February 1, 1902, are, in large letters, the words "Landlords' Protective Department," and underneath said words, in small letters, are the words "Campe Commercial Agency." On page 5 of the pamphlet is the following: "The five objects of the Landlords' Protective Department: (1) To give landlords legal advice with reference to all disputes between themselves and their tenants; (2) to eject undesirable tenants for failure to pay rent, or for other reasons; (3) to advise and render legal services with reference to all general taxes, special assessments, tax sales and tax redemptions; (4) to give advice and render legal services with reference to city ordinances and violations; (5) to give advice and render legal services in merchanics' lien cases and disputes between landlords and tenants."

This and other evidence in the case shows that the business of the defendants includes similar business to that of complainant. On page 6 of the pamphlet, and immediately following the matter above quoted, this appears: "We charge a membership fee of one ($1.00) dollar, which entitles the member to free legal advice on all matters growing out of the five objects aforementioned." On page 7 of the pamphlet it is stated: "On receipt at our office of the one dollar membership fee we send you a membership certificate which runs for one year, beginning one month after receipt by us of the membership fee." A receipt issued by defendants, offered in evidence, is as follows:

"CHICAGO, ILLINOIS, *June 4, 1902.*

"Received of Mr. Charles Ruge one dollar, entitling him to one year membership in the Landlords' Protective Department of the Campe Commercial Agency, including all privileges and benefits of said department.

LANDLORDS' PROTECTIVE DEPARTMENT,
Per W. E. GRAY."

A certificate of membership of Charles G. Ruge was also offered, headed, in large printed capitals, "Campe Commercial Agency," next under which words are, in smaller capitals, the words "Landlords' Protective Department," and next below the last words, "422-423-424 Ashland Block, Chicago." The certificate is signed in the following printed names, viz.: "Campe Commercial Agency, Landlords' Protective Department," the former words being in capitals and the latter not. In writing, after the word "Department," is written, "Campe." Similar certificates were issued to persons applying for membership, on payment of the usual fee.

The defendants used a business card about four and one-half by two and three-quarters inches in size, on which was the following:

TEL. MAIN 2625

# Landlords' Protective Department

CAMPE COMMERCIAL AGENCY

422-423-424 Ashland Block

N. E. Cor. Randolph and Clark Streets

W. E. GRAY
Special Representative

CHICAGO

(OVER)

On the back of the card is the following:

## HOW IT PROTECTS

THE FIVE OBJECTS OF THE DEPARTMENT

1.  Free Legal advice with reference to disputes between landlord and tenant.
2.  Ejecting undesirable tenants for failure to pay rent, or other reasons.
3.  Free legal advice with reference to all general taxes, special assessments, tax sales and tax redemptions.
4.  Free legal advice with reference to city ordinances and violations thereof.
5.  Free legal advice in all mechanics' lien cases and disputes between owners and contractors.

MEMBERSHIP FEE $1.00 A YEAR.   NO ASSESSMENT.

The words "Landlords' Protective Department" on the card are in much larger letters than are the words next under them. Persons who had done business with complainant testified its reputation for fair dealing is good.

The foregoing is, in substance, the statement of the case by the Appellate Court. The defendants did not

deny that they were transacting business under the name of "Landlords' Protective Department," but denied that they did so with any fraudulent intent to injure the business of the complainant, and also denied that they had any knowledge, at the time they organized their Landlords' Protective Department, of the existence of the complainant corporation, and denied all the allegations of the bill to the effect that they, through their agents, had represented that they were a branch of the Chicago Landlords' Protective Bureau, or had any connection whatever with its offices or place of business.   Several witnesses testified that numerous persons to whom the defendants had issued certificates of membership in the Landlords' Protective Department applied at the office of appellee for aid and assistance, under the impression that the business of the defendants was that of the complainant.   Others testified that one W. E. Gray, solicitor for the defendants, informed them, upon different occasions, that the business they were conducting was a part of the business of the complainant.   One witness testified: "I asked him, 'Is that in connection with this concern on Division street?' He said, 'Yes, sir.' I says, 'Then I am on the safe side.' He says, 'That is merely a branch office of ours, and the main office is down town, in the Ashland Block.' I said, 'All right,' and I paid the dollar and got the receipt."

ALBERT. B. GEORGE, for appellants:

To support an injunction to restrain the use of generic terms or mere descriptive words in a trade name, it is absolutely essential that fraud be alleged in the bill of complaint and that the evidence should clearly sustain the allegation of fraud.   *Elgin Butter Co.* v. *Elgin Creamery Co.* 155 Ill. 127; *Allegretti* v. *Chocolate Cream Co.* 177 id. 129; *Merchants' Detective Ass.* v. *Detective Mercantile Agency*, 25 Ill. App. 297; *Nokes* v. *Mueller*, 72 id. 431; *International Committee Y. W. C. A.* v. *Y. W. C. A. of Chicago*, 194 Ill. 194.

No individual or corporation can appropriate a name composed of ordinary descriptive words which may with equal truth be used by another individual or corporation to designate its business, its character or its purposes. *Goodyear India Rubber Glove Co.* v. *Goodyear Rubber Co.* 128 U. S. 598; *Bolander* v. *Peterson,* 136 Ill. 215; *Elgin Butter Co.* v. *Elgin Creamery Co.* 155 id. 127.

The adoption and use of generic terms or mere descriptive words in a business name do not create any exclusive right to the use of such terms or words. *Hazelton Boiler Co.* v. *Tripod Boiler Co.* 142 Ill. 494; *Candee* v. *Deere,* 54 id. 439; *Bolander* v. *Peterson,* 136 id. 215.

Equity will not enjoin the use of generic terms or mere descriptive words in a business name, in the absence of fraud, where ordinary attention will enable patrons or purchasers to discriminate between the parties. *Ball* v. *Siegel,* 116 Ill. 137; *Elgin Butter Co.* v. *Elgin Creamery Co.* 155 id. 127.

Appellee is not entitled to an injunction restraining the use of generic words merely because the alleged similarity of the names caused or may cause confusion. *Hazelton Boiler Co.* v. *Tripod Boiler Co.* 142 Ill. 494.

CHENEY & EVANS, (JOHN F. HOLLAND, of counsel,) for appellee:

It is not necessary, to entitle appellee to relief, that appellants' intention in adopting the name complained of was fraudulent or wrongful. The absence of fraudulent intention is no defense. Browne on Trade-marks, sec. 386, and cases cited; Hopkins on Unfair Trade, sec. 115.

It is no defense that the defendants did not know of the existence of the complainant. High on Injunctions, sec. 1087, p. 843.

It is no defense that defendants have always used their own name or initials in conjunction with the infringement. Hopkins on Unfair Trade, sec. 115; *Menendez* v. *Holt,* 128 U. S. 514.

It is of no avail to the defendants that they have warned their servants or employees to explain to purchasers that they are a different company from the complainant. *Chappell* v. *Davidson,* 2 Kay & J. 123; 2 DeG., M. & G. 1; *Low* v. *Hart,* 90 N. Y. 457; Hopkins on Unfair Trade, sec. 115.

A corporation is entitled to protection in the use of its corporate name upon the same principle, and at least to the same extent, that individuals are protected in the use of trade-marks. *Newby* v. *Railroad Co.* Deady, 609.

A corporation is entitled to protection in the use of its corporate name as a trade-mark although the words composing such name are generic terms or descriptive words. *Holmes, Booth & Haydens* v. *Holmes, Booth & Atwood Manf. Co.* 37 Conn. 278; *Merchants' Detective Ass.* v. *Detective Mercantile Agency,* 25 Ill. App. 250.

An injunction will be granted to restrain a defendant from using a trade name similar to the complainant's name, where it appears that the defendant, by the use of such name, is attempting to convey the idea that he is carrying on a branch of the complainant's business. *Cady* v. *Schultz,* 19 R. I. 193.

Mr. JUSTICE WILKIN delivered the opinion of the court:

It is not denied that the allegations of the bill are sufficient to justify the interposition of a court of equity to restrain the defendants in the use of the generic or descriptive words, "Landlords' Protective Department," and we are unable to see how it can be seriously contended that the evidence does not fairly support those allegations. The law undoubtedly is that the complainant, the Chicago Landlords' Protective Bureau, had no right to appropriate to itself the exclusive use of that name to the exclusion of the right of the defendants to use the descriptive words "Landlords' Protective Department," so long as the use of those words was with a legitimate and honest purpose, but whenever defendants,

intentionally or otherwise, took advantage of the simi-
larity of the name adopted by them to the one under
which the complainant was incorporated and had been
carrying on its business, to mislead the public, or, with-
out explanation, allowed their clients to be misled into
the belief that the two business associations were one
and the same, it violated the·lawful rights of the com-
plainant and the plainest principles of equity.  Fraud
is the gist of actions of this kind.  Courts of equity will
never enjoin the use of generic or descriptive words in
a trade-mark or business name except upon an allega-
tion and proof of actual fraud or fraud resulting from
the similarity of the names, tending to lead those deal-
ing with the parties to believe that they are one and the
same, even though they use ordinary care to discrimi-
nate between them.  (*Ball* v. *Siegel*, 116 Ill. 137; *Elgin But-
ter Co.* v. *Elgin Creamery Co.* 155 id. 127.)  In the case of
*Allegretti* v. *Allegretti Chocolate Cream Co.* 177 Ill. 129, on
page 133 we said:  "The defendants had a right to open
up their business under the firm name of Allegretti &
Co., provided they did so without any intent, act or ar-
tifice to mislead dealers in the market, or the public at
large, as to the identity of the firm.  If they established
their new business and sought to conduct it with the
fraudulent and wrongful intention of attracting to them-
selves the custom intended for appellees, this is clearly
a fraud upon the rights of the latter.  Whether the busi-
ness was carried on with such wrongful intent to deceive
is a question of fact which was found adversely to ap-
pellants upon a hearing, and is the one we must deter-
mine from an examination of the evidence."  The same·
doctrine is announced in *International Committee of Young
Women's Christian Associations* v. *Young Women's Christian
Association of Chicago*, 194 Ill. 194.

We think the true ground upon which the jurisdiction
of a court of equity to restrain the defendants, as prayed
in this bill, rests, is that the name assumed by the de-

fendants is so similar to that of the complainant as to mislead and confuse the public mind in the city of Chicago as to the identity of the business in which the two parties were engaged. *Investor Publishing Co. v. Dobinson*, 72 Fed. Rep. 603; *Guardian Fire Assurance Co. v. Guardian and General Ins. Co.* L. R. 50 Ch. (N. S.) 253; *Lee v. Halley*, L. R. 5 Ch. App. Cas. 155; *Knott v. Morgan*, 2 Keene, 215; *United States Mercantile Reporting Co. v. United States Mercantile Reporting and Collecting Ass.* 21 Abb. N. C. 115; *Matsell v. Flanagan*, 2 Abb. Pr. 459.

*Sanders v. Jacob*, 20 Mo. App. 96, is a case in point illustrating the doctrine of the foregoing authorities. There the petitioner had been engaged in the practice of dentistry in the city of St. Louis, under the business name "New York Dental Rooms," for many years. Some two months prior to the bringing of the suit the defendant, who was also a dentist, opened an office near the plaintiff's, and displayed a sign bearing the words "Newark Dental Rooms," the sign being similar in appearance to the plaintiff's sign. The court, after stating that an injunction may issue where the resemblance between the two trade names is sufficiently close to raise a probability of mistake on the part of the public or the evidence shows the design to mislead and deceive on the part of the defendant, said: "In the present case both of these elements concur. There was sufficient resemblance between the two signs to raise a probability of mistake on the part of the class of customers that frequented the plaintiff's place of business. The evidence further shows that such mistakes actually occurred. It further satisfies us that the defendant intended that they should occur."

In *United States Mercantile Reporting Co. v. United States Mercantile Reporting and Collecting Ass.* 21 Abb. N. C. 115, the ground upon which the injunction was granted and maintained was stated by the judge rendering the opinion: "It seems to me that the name under which the defendant was incorporated and is doing business is such

a colorable imitation of that of plaintiff's that an injunction should be granted restraining its continuance. The cards and bill-heads in evidence show a disposition on the part of the defendant to make unduly prominent that portion of its corporate name which is most similar to the name of the plaintiff. Certain it is that the use by the defendant of its corporate name has led to confusion in the delivery of the mail matter addressed to the parties in question."

In the case of *Lamb Knit Goods Co.* v. *Lamb Glove and Mitten Co.* 120 Mich. 159, this language appears: "In the present case the testimony shows that dealers have been misled, and in view of the fact that the complainant's business is largely the manufacture of gloves and mittens and that the name 'Lamb' is prominent in the corporate name, we think it is likely to mislead. The decree will be reversed and a decree entered restraining the defendant from continuing the use of the corporate name 'Lamb Glove and Mitten Company,' or any name in which the word 'Lamb' appears in connection with other words indicating a business similiar to that of complainant." And so cases might be cited almost without number, to the same effect.

While it is true that the defendant Campe, who seems to have been the active member of the defendant firm in the Landlords' Protective Department, testified that he had no knowledge of the existence of the complainant corporation at the time of the organization of their department, he admits that he had knowledge of the fact that the similarity of the names was calculated to mislead the public to the injury of the complainant. He says: "I did not know of the Chicago Landlords' Protective Bureau until about five or six months ago. I didn't know it was in existence at the time I established the Landlords' Protective Department. I had not seen their letter-heads. I didn't know Mr. Terwilliger or Mr. Cheney." But in answer to a question by his solicitor

he stated that he had not instructed any of his agents to represent that they were connected with the complainant. "I warned them against it after I became acquainted with the name of the Chicago Landlords' Protective Bureau." And again: "I warned our agents against representing themselves as complainant as soon as I began to hear of the similarity of the name. * * * I cannot fix the date when I warned our agents not to represent themselves as complainant; it was within the past six months." '

We have already seen that such confusion did result, as is abundantly shown by the evidence. "Landlords' Protective Bureau" and "Landlords' Protective Department" are manifestly so similar as to almost necessarily lead to complication and confusion in the business of the two parties, and it is of no importance, in this view of the case, that the defendants had no knowledge of the existence of the complainant until after they had organized their rival business, or had no intention of injuring complainant. As was said in *Newby* v. *Oregon Central Railroad Co.* Deady's Rep. U. S. District of Oregon, 609: "Under the law the corporate name is a necessary element of the corporation's existence. Without it a corporation cannot exist. Any act which produces confusion or uncertainty concerning this name is well calculated to injuriously affect the identity and business of a corporation; and, as a matter of fact, in some degree, at least, the natural and necessary consequence of the wrongful appropriation of a corporate name is to injure the business and rights of the corporation by destroying or confusing its identity. The motives of the persons attempting the wrongful appropriation are not material. They neither aggravate nor extenuate the injury caused by such appropriation. The act is an illegal one, and must, if necessary, be presumed to have been done with an intent to cause the results which naturally flow from it."

It may be conceded that the evidence in this record as to the actual and intentional fraud is conflicting, and if the determination of the case depended upon that alone there would be force in the argument that the finding of the chancellor, who saw the witnesses and heard them testify, should not be disturbed, but we think the undisputed fact that the similarity of names resulted in embarrassment and injury to the complainant justified the conclusion of the Appellate Court, and its judgment will accordingly be affirmed.     *Judgment affirmed.*