LOYD THOMPSON, d/b/a Spring Green Landscaping, Plaintiff-Appellant, *v.* SPRING-GREEN LAWN CARE CORP. *et al.*, Defendants-Appellees.

First District (4th Division)   No. 83—947

Opinion filed June 7, 1984.—Rehearing denied July 26, 1984.

Marvin N. Benn and Wayne H. Michaels, both of Hamman, Benn & Miller, of Chicago, for appellant.

Theodore A. Shapero, P.C., Diane Fields Geocaris, and Thomas F. Geselbracht, all of Rudnick & Wolfe, of Chicago, for appellees.

PRESIDING JUSTICE LINN delivered the opinion of the court:

On January 22, 1974, plaintiff, Loyd Thompson, and his business partner, Guenther Herden, entered into a contract with Robert Gora for the sale of a business known as "Spring Green Landscaping," founded by Gora, who operated it from 1966 through 1974. In addition to customer lists, vehicles, machinery and equipment, the sale included the good will of the business and use of the business's name, which Gora had registered in Cook County under the Assumed Name Statute in May 1968. Plaintiff registered the service mark "Spring Green" under the Illinois Trademark Act in May 1978.

Gora described the nature of Spring Green Landscaping as offering lawn maintenance, reconstruction and a "complete landscaping package." A 1971 flier sent to prospective customers advertising Spring Green Landscaping described the lawn maintenance program offered as including

"Weekly lawn cutting and pick-up
Fertilizing entire lawn area twice a year
Trimming of any shrubs and evergreens up to three times a year
Monthly edging of sidewalk areas
Weeding around shrubs and any existing flower beds"

When plaintiff purchased the business in 1974, approximately three-

quarters of the customer accounts involved fertilization as part of their lawn maintenance program. Plaintiff testified that over 50% of his customers have fertilizer and weed killer applied to their lawns.

Gora originally operated Spring Green Landscaping out of Brookfield but gradually expanded his services to customers in areas including LaGrange, Hinsdale, Darien, Naperville and Mount Prospect. Plaintiff operates the business out of Hinsdale and services communities in Cook, Du Page, and Will counties. Between 1974 and 1977, plaintiff advertised his business in the yellow and white pages of the telephone directories for the western suburbs of Chicago. In 1979, he also began advertising in the Contractors Trade Directory and paying the Welcome Wagon to distribute, in Oak Brook, a pot holder with the words "Spring Green" on it. In 1982, he resumed advertising, after a 10-year lapse, in the Contractors Register; and in 1981 and 1982, he began to advertise under the "Lawn Maintenance" category, in addition to the "Landscaping" category, so that in the Yellow Pages of the telephone directory for the western suburbs, his business listing appeared in the same column as defendant, "Spring-Green Lawn Care Corporation." The mark "Spring Green" appears on plaintiff's business cards, business records and landscaping equipment, including the pickup trucks which carry his equipment to the customers' residences.

Defendant, Spring-Green Lawn Care Corporation (Spring-Green), is in the business of liquid chemical fertilization and insect and weed control for lawns, bushes and trees. Spring-Green was incorporated in Delaware in January 31, 1977, and certified to do business in Illinois on March 11, 1977. On March 21, 1977, Spring-Green filed an application with the U.S. Patent and Trademark Office for registration of its service mark "Spring-Green." When defendant's mark was published for opposition, plaintiff filed an opposition, and the record suggests no U.S. patent was ever issued. On March 22, 1977, defendant obtained a certificate of registration for the mark "Spring-Green" from the State of Illinois and has obtained State service mark registration in Iowa and Indiana as well.

· The chemical lawn treatment concept upon which Spring-Green was founded was developed by defendant William R. Fischer, a director, shareholder, and president of the corporation. Defendant H.R.M. Enterprises, Inc. (H.R.M.), is a franchisee of Spring-Green, and defendant Edward Carroll was manager of H.R.M.

Spring-Green began franchising its operation in 1977 through a pilot program covering communities in the western suburbs of Cook County, with its principal place of business in Naperville, Illinois. At the time of trial, Spring-Green had expanded to 41 franchises operat-

ing throughout the northern Illinois area.

The basic Spring-Green program of lawn care consists of four applications per year of a chemical fertilizer, including weed, crabgrass and insect control. The liquid chemical fertilizer is delivered in tank trucks and is sprayed on the lawn. The program is limited to lawn treatment and includes no landscaping or lawn mowing.

Defendant's logo consists of the words "Spring-Green" in white letters on a green background and a stylized "SG" formed around droplets, in a circular form. Although the logo is sometimes captioned with the words "Professional Lawn & Tree Care," "Spring-Green" is the salient part of the mark. The mark is used on the corporation's advertising brochures, envelopes, office forms, stationery, and trucks. Spring-Green advertises in the yellow pages of the telephone directory for the western suburbs, also under the headings of "Landscaping" and "Lawn Maintenance."

In April 1979, plaintiff first learned of the existence of Spring-Green and, through his attorney, sent Spring-Green and H.R.M. a cease and desist letter claiming his exclusive right to use the mark "Spring Green." On April 24, 1978, Thompson's attorney sent a second cease and desist notice to Spring-Green. Defendant Fischer claims it was at this time that he first learned of the existence of Spring Green Landscaping. Defendant Carroll, however, testified that he had known of Spring Green Landscaping for "several years" prior to actual receipt of the cease and desist notice.

Defendants continued and continue to use and advertise the service mark "Spring-Green" in their lawn care franchising business and to expand their franchise operation.

In July 1978, plaintiff filed a seven-count complaint, alleging Federal and State statutory service mark infringement (15 U.S.C. sec. 1125(a) (1982); Ill. Rev. Stat. 1981, ch. 140, par. 19), common law infringement, dilution of trade name (Ill. Rev. Stat. 1981, ch. 140, par. 22), and common law and statutory unfair competition (Ill. Rev. Stat. 1981, ch. 121½, par. 312). Both parties moved for summary judgments; upon both motions being denied, trial commenced.

At trial, plaintiff introduced four witnesses who testified as to their actual confusion between the two service marks "Spring Green" and "Spring-Green." In addition, plaintiff testified that he had received over 300 telephone calls between 1978 and 1982 from callers who were actually seeking Spring-Green, the defendant corporation. Plaintiff also submitted into evidence letters and checks, intended for the defendant, that had mistakenly been sent to plaintiff.

Defendants moved for a directed finding at the close of plaintiff's

case. On March 25, 1983, the trial court granted defendants' motion and dismissed plaintiff's case with prejudice. It is from the order granting the directed finding plaintiff now appeals.

OPINION

I

■ In nonjury cases, the defendant may move for a directed finding in his favor at the close of plaintiff's case. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1110.) In ruling on the motion, the trial court must consider all of the evidence, including any favorable to the defendant, pass on the credibility of the witnesses, draw reasonable inferences from the testimony, and generally consider the weight and quality of the evidence presented. (*Justine Realty Co. v. American Can Co.* (1983), 119 Ill. App. 3d 582, 456 N.E.2d 871.) In any case in which the plaintiff has not presented at least some evidence on every essential element of his cause of action, the defendant is entitled to judgment in his favor as a matter of law. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 407 N.E.2d 43.) Thus, in deciding a motion made pursuant to Code of Civil Procedure section 2—1110, the trial court must determine whether plaintiff has made out a *prima facie* case, and, on appeal, the decision of the trial judge should not be reversed unless it is against the manifest weight of the evidence. *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 407 N.E.2d 43.

II

■ Plaintiff's action is essentially one of trademark or service mark infringement. Under the Illinois Trademark Act (Ill. Rev. Stat. 1981, ch. 140, par. 8(a)),

> " 'Mark' includes any trade-mark or service mark whether registered or not. *** 'Service mark' means anything adopted and used by a person to identify services rendered by him or with his authorization and which distinguishes them from services rendered by others."

The principles of trademark law and the tests for infringement are basically the traditional ones of common law under both State and Federal statutes. (*Berghoff Restaurant Co. v. Lewis W. Berghoff, Inc.* (N.D. Ill. 1973), 357 F. Supp. 127, *aff'd* (7th Cir. 1974), 499 F.2d 1183.) Because the statutes themselves neither create a valid trademark nor establish new rights, courts apply a single analysis to Federal, State, and common law claims. (*Ye Olde Tavern Cheese Products, Inc., v. Planters Peanuts Division, Standard Brands Inc.* (N.D. Ill. 1966),

261 F. Supp. 200, *aff'd* (7th Cir. 1967), 394 F.2d 833.) We may therefore look to Federal as well as to State case law in resolving the instant issues.

The resolution of a trademark infringement claim necessarily involves a two-step analysis. First, the court must determine if the mark used by the party alleging infringement is in fact a valid mark. If the trademark or service mark is not valid, *i.e.,* legally protectable, an infringement action cannot lie, and the inquiry is at an end. If, however, the plaintiff's mark is of the type for which the law affords protection, the court must proceed to determine if the alleged infringor's use of a similar mark brings about "likelihood of confusion" on the part of the consuming public. (*St. Charles Manufacturing Co. v. St. Charles Furniture Corp.* (N.D. Ill. 1979), 482 F. Supp. 397; *Mars, Inc. v. Curtiss Candy Co.* (1972), 8 Ill. App. 3d 338, 290 N.E.2d 701.) If so, a right to relief for infringement has been shown.

■ The first inquiry in the instant case must then be whether the words "Spring Green," as used in that particular combination, may be employed as a service mark, or whether this combination of words belongs in the public domain such that plaintiff's use of it is not entitled to legal protection. In other words, is "Spring Green" a valid mark.

A term for which trademark protection is sought will fit into one of four categories ranging from (1) generic or common descriptive and (2) merely descriptive, to (3) suggestive and (4) arbitrary or fanciful. (*Miller Brewing Co. v. G. Heileman Brewing Co.* (7th Cir. 1977), 561 F.2d 75, *cert. denied* (1978), 434 U.S. 1025, 54 L. Ed. 2d 772, 98 S. Ct. 751.) The *Miller* court deftly summarized these four categories as follows:

> "A generic or common descriptive term is one which is commonly used as the name or description of a kind of goods. It cannot become a trademark under any circumstances. [Citations.] ***
>
> A merely descriptive term specifically describes a characteristic or ingredient of an article. It can, by acquiring a secondary meaning, i.e., becoming 'distinctive of the applicant's goods,' *** become a valid trademark. [Citation.]
>
> A suggestive term suggests rather than describes an ingredient or characteristic of the goods and requires the observer or listener to use imagination and perception to determine the nature of the goods. Such a term can be protected without proof of a secondary meaning." *Miller Brewing Co. v. G. Heileman Brewing Co.* (7th Cir. 1977), 561 F.2d 75, 79, *cert. denied* (1978), 434 U.S. 1025, 54 L. Ed. 2d 772, 98 S. Ct. 751.

"An Act to provide for the registration and protection of trademarks ***" (the Illinois Trademark Act) plainly excepts from registration those marks which, when applied to the goods or services of the applicant, are "merely descriptive" unless that mark has become distinctive of the applicant's goods or services. (Ill. Rev. Stat. 1981, ch. 140, par. 9(e)(1).) The Act further states:

> "The Secretary of State may accept as evidence that the mark has become distinctive, as applied to the applicant's goods or services, proof of continuous use thereof as a mark by the applicant in this State or elsewhere for the 5 years next preceding the date of the filing of the application for registration ***." (Ill. Rev. Stat. 1981, ch. 140, par. 9(e)(3).)

Registration under the Lanham Act (15 U.S.C. secs. 1051-1127) (1982)) or under the Illinois Trademark Act (Ill. Rev. Stat. 1981, ch. 140, pars. 8 through 22) creates a presumption of adoption and continued use and is *prima facie* evidence of validity. *Ye Olde Tavern Cheese Products, Inc. v. Planters Peanuts Division, Standard Brands Inc.* (N.D. Ill. 1966), 261 F. Supp. 200, *aff'd* (7th Cir. 1967) 394 F.2d 833.

Bearing in mind that at this level of inquiry, we are dealing solely with the validity or protectability of the mark, we must conclude the following: (1) registration under the Illinois Trademark Act is *prima facie* evidence of validity (*Mr. Travel, Inc. v. V.I.P. Travel Service, Inc.* (N.D. Ill. 1966), 268 F. Supp. 958, *aff'd* (7th Cir. 1967), 385 F.2d 420), and (2) the Secretary of State will not issue a certificate of registration to those marks which are "merely descriptive" unless the Secretary finds that such marks, due to continuous use, have become distinctive.

We note initially that defendant's attempt to rebut the presumption of validity is, to a great extent, undermined by its own action of registering the mark. Any argument of invalidity made by defendant based on the claim that the words "Spring Green" are merely descriptive has little credence in light of defendant's prior registration under the Illinois Trademark Act. Perhaps aware of this inconsistency, defendant makes no direct argument that the mark is unprotectable but rather adopts the trial court's reasoning and conclusion that the words "Spring Green" are merely descriptive and have not acquired a secondary meaning. The analysis necessary to reach this conclusion is included in defendant's brief as a factor of "likelihood of confusion." To understand this analysis and decide the merits of the trial court's conclusion, in order to determine whether defendant has met its burden of proving the mark invalid, we must examine the critical distinc-

tion, the one to be made in the instant case, between a "merely descriptive" mark and that is "suggestive." *Money Store v. Harriscorp Finance, Inc.* (7th Cir. 1982), 689 F.2d 666.

In the instant case, plaintiff filed for and obtained a certificate of registration from the Secretary of State pursuant to the Illinois Trademark Act, on May 5, 1978. The certificate states that the service mark "Spring Green" was first used in 1967. Moreover, defendant, who now claims that the words "Spring Green" are merely descriptive and therefore not protectable, also filed for and obtained a certificate of registration for the service mark "Spring-Green." While the Secretary could have found the mark "merely descriptive" but distinctive in the case of plaintiff, who had used the mark for five years preceding the date of application, such could not have been the case for defendant, who had incorporated the same year as the application was filed. Because the Secretary of State registered the marks "Spring Green" and "Spring-Green" without, in defendant's case, proof of distinctiveness, he apparently found the mark to be suggestive. (*Money Store v. Harriscorp Finance, Inc.* (7th Cir. 1982), 689 F.2d 666.) The Secretary's repeated issuance of certificates for the service mark "Spring Green" therefore serves as a *prima facie* evidence of the mark's validity, and the issuance to defendant serves additionally to negate classification of the mark as "merely descriptive."

A *prima facie* case of validity thus having been established, the burden shifted to defendant to rebut the presumption of protectability.

In analyzing the distinction between "merely descriptive" and "suggestive," the Seventh Circuit noted that

> "One of the better statements of the distinction between merely descriptive and suggestive marks appears in A. Seidel, S. Dalroff, and E. Gonda, *Trademark Law and Practice* sec. 4.06, at 77 (1963): 'Generally speaking, if the mark imparts information directly, it is descriptive. If it stands for an idea which requires some operation of the imagination to connect it with the goods, it is suggestive.' (quoted in Union Carbide, 531 F.2d at 379); *see also* Tel-Med, 588 F.2d at 217 ('A suggestive term suggests rather than describes an ingredient or characteristic of the goods and requires the observer or listener to use imagination and perception to determine the nature of the goods.')." (*Money Store v. Harriscorp Finance, Inc.* (7th Cir. 1982), 689 F.2d 666, 673-74.)

The court in *Money Store* affirmed the district judge's conclusion that "The Money Store" was a suggestive mark because the words did not convey the essence of the business. Conversely, courts have found the

words "Lite" (*Miller Brewing Co. v. G. Heileman Brewing Co.* (7th Cir. 1977), 561 F.2d 75, *cert. denied* (1978), 434 U.S. 1025, 54 L. Ed. 2d 772, 98 S. Ct. 751), "Auto Page" (*Gimix, Inc. v. JS & A Group, Inc.* (7th Cir. 1983), 699 F.2d 901), and "Everready" (*Union Carbide Corp. v. Ever-Ready Inc.* (7th Cir. 1976), 531 F.2d 366, *cert. denied* (1976), 429 U.S. 830, 50 L. Ed. 2d 94, 97 S. Ct. 91) descriptive because they directly impart information by describing a characteristic of the product.

Suggestive terms, however, do not describe the qualities of a particular product or service but rather require some operation of the imagination to connect the term with the goods or service. (*Union Carbide Corp. v. Ever-Ready Inc.* (7th Cir. 1976), 531 F.2d 366, *cert. denied* (1976), 429 U.S. 830, 50 L. Ed. 2d 94, 97 S. Ct. 91.) Suggestive terms merely hint at the product or the result of using the product and yet, viewed in the abstract, do not readily lead to an identification of the product area. (Intellectual Property Law (Ill. Inst. Cont. Legal Educ. 1978).) Words which could not individually become a trademark, because taken separately they are either generic or descriptive, may become one when taken together. (*Union Carbide Corp. v. Ever-Ready Inc.* (7th Cir. 1976), 531 F.2d 366, *cert. denied* (1976), 429 U.S. 830, 50 L. Ed. 2d 94, 97 S. Ct. 91.) The question to be asked is whether, *as applied to plaintiff's services*, the proposed mark is "merely descriptive" or "suggestive." *Ex parte Colvin, Mendelhall & Co.* (1953), 98 U.S.P.Q. 415.

In *Colvin*, the commissioner of patents, in finding that the term "The Technical Trend" was registerable as a service mark for an investment advisory service, concluded the following:

> "The applicant does not sell 'trends.' The fact that it may study and analyze certain trends in rendering its services, and the further fact that such trends may form the basis of specific recommendations to its clients with respect to investment policy or timing, do not *** lead to a conclusion that the word 'trend' is descriptive or generic when applied to the services of the applicant. This combination of a descriptive word with a generic word has no meaning which would in any way suggest an investment advisory service ***.
>
> In determining the question of whether or not a given mark is merely descriptive, one is not required to go through mental gymnastics." *Ex parte Colvin, Mendelhall & Co.* (1953), 98 U.S.P.Q. 415, 416.

■ This analysis applies with equal force to the words "Spring Green." The term itself, though composed in part of a descriptive

word, is not descriptive of the plaintiff's service and requires some operation of imagination to connect it with the service. To reach the trial court's conclusion, that the term is descriptive because it communicates the "qualities and objectives" of lawn care, requires an exercise in mental gymnastics. The trial court's strained reasoning is further evidenced by its reliance on the observation that "Spring Green" "indicates a time of year associated with the care of lawns" to support its finding of descriptiveness.

In light of the foregoing analysis, we must necessarily conclude that defendant failed to carry his burden of proving the service mark invalid and, consequently, that the trial court's finding the mark to be descriptive rather than suggestive is clearly erroneous. Our determination that the mark is suggestive precludes the necessity of finding of secondary meaning. *Miller Brewing Co. v. G. Heileman Brewing Co.* (7th Cir. 1977), 561 F.2d 75, *cert. denied* (1978), 434 U.S. 1025, 54 L. Ed. 2d 772, 98 S. Ct. 751.

The exclusive right to use a suggestive term in connection with a service vests in that individual who first used the term in a particular market. (*Walt-West Enterprises, Inc. v. Gannett Co.* (7th Cir. 1982), 695 F.2d 1050.) The transfer of the property and effect of a business carries with it the exclusive right to use such trademarks or trade names as have been used in such business. (*Allegretti v. Allegretti Chocolate Cream Co.* (1898), 177 Ill. 129, 52 N.E. 487.) Ownership of a service mark is acquired by adoption and prior and continuous use of the mark in an individual's business. (*El Sombrero Corp. v. Bolivar* (1982), 106 Ill. App. 3d 925, 436 N.E.2d 733.) State registration of a service mark does not create rights which would not otherwise exist; no substantive rights are established by registration. *Mars, Inc. v. Curtiss Candy Co.* (1972), 8 Ill. App. 3d 338, 290 N.E.2d 701.

Under the present facts, it is plaintiff and not defendant who is entitled to trademark protection, regardless of the fact that defendant registered first. Robert Gora began the business under the name Spring Green Landscaping in 1967, and it is this date that is noted on plaintiff's certificate of registration as the time at which the service mark was first used in Illinois. When plaintiff purchased the business from Gora in 1974, he purchased the good will of the business and the use of the business' name which he continued to use, continuously used, and continues to use. Defendant did not incorporate his business until 1977, at which time he registered and began using the service mark "Spring-Green." Under the applicable law of trademarks, it is therefore plaintiff who is entitled to protection if the evidence indi-

cates a likelihood of confusion on the part of the consuming public due to defendant's use of a similar mark.

■ The test of trademark infringement under the Lanham Trade-Mark Act (15 U.S.C. sec. 1114(1)(1982)) and in Illinois is likelihood of confusion. (*James Burrough Ltd. v. Sign of the Beefeater, Inc.* (7th Cir. 1976), 540 F.2d 266.) Infringement is found when the evidence indicates a likelihood of confusion, deception or mistake on the part of the consuming public, namely, ordinary purchasers purchasing in the ordinary manner. (*Ye Olde Tavern Cheese Products, Inc. v. Planters Peanuts Division, Standard Brands, Inc.* (N.D. Ill. 1966), 261 F. Supp. 200, *aff'd* (7th Cir. 1967), 394 F.2d 833.) The test is the consumer's state of mind when faced with the marks individually. (*Union Carbide Corp. v. Ever-Ready Inc.* (7th Cir. 1976), 531 F.2d 366, *cert. denied* (1976), 429 U.S. 830, 50 L. Ed. 2d 94, 97 S. Ct. 91.) Confusion will be found where one adopts a trademark or trade name so like another in form, spelling, or sound that one with a not very definite or clear recollection as to the real mark is likely to become confused or misled. (*Spangler Candy Co. v. Crystal Pure Candy Co.* (7th Cir. 1965), 353 F.2d 641.) It is incumbent upon the latecomer to avoid such confusion. *Union Carbide Corp. v. Ever-Ready Inc.* (7th Cir. 1976), 531 F.2d 366, *cert. denied* (1976), 429 U.S. 830, 50 L. Ed. 2d 94, 97 S. Ct. 91.

Generally, likelihood of confusion is a question of fact subject, on review, to the clearly erroneous standard. (*Union Carbide Corp. v. Ever-Ready Inc.* (7th Cir. 1976), 531 F.2d 366, *cert. denied* (1976), 421 U.S. 830, 50 L. Ed. 2d 94, 97 S. Ct. 91.) However, in cases such as the instant case, where the determination is to some extent predicated upon the similarity of the marks themselves, it is a mixed question of law and fact, and a court of review is in as good a position as the trial judge to determine the probability of confusion. (531 F.2d 366.) Even in the absence of evidence showing actual confusion, the court can visualize the likelihood of consumer confusion wholly from the similarity of the marks. *Ye Olde Tavern Cheese Products, Inc. v. Planters Peanuts Division, Standard Brands, Inc.* (N.D. Ill. 1966), 261 F. Supp. 200, *aff'd* (7th Cir. 1967), 394 F.2d 833.

■ There is no ineluctable test of likelihood of confusion (*Baker's Associates, Inc. v. Kellog Co.* (N.D. Ill. 1969), 296 F. Supp. 772), and no one factor is *per se* determinative in a trademark infringement action. (*James Burrough Ltd. v. Sign of The Beefeater, Inc.* (7th Cir. 1976), 540 F.2d 266.) In determining whether likelihood of confusion exists, courts typically consider such factors as the degree of similarity between the marks in appearance and suggestion; the similarity of

the products for which the name is used; the area and manner of current use; the degree of care likely to be exercised by customers; the strength of the complainant's mark; actual confusion; and an intent on the part of the infringer to palm off his products as those of the complainant. (*NFE International, Ltd. v. General Resource Corp.* (N.D. Ill. 1983), 558 F. Supp. 1137.) Similarity in the sound of trademarks or service marks enters into a consideration of likelihood of confusion. Evidence of actual confusion, though not required, is entitled to substantial weight. 558 F. Supp. 1137.

In Illinois, a latecomer, regardless of fraudulent intent or actual injury, owes a duty to take affirmative precautions sufficient to make confusion in the use of similar service marks improbable. (*Jewel Tea Co. v. Kraus* (7th Cir. 1950), 187 F.2d 278.) Taking into consideration these pertinent factors in our determination of likelihood of confusion, we find that defendant has breached his duty to avoid confusion on the part of the consuming public.

Here, the salient words in plaintiff's and defendant's marks are identical. (*Independent Nail & Packing Co. v. Stronghold Screw Products, Inc.* (7th Cir. 1953), 205 F.2d 921.) The addition or deletion of a hyphen is insufficient to distinguish the marks. (*Union Carbide Corp. v. Ever-Ready Inc.* (7th cir. 1976), 531 F.2d 366, *cert. denied* (1976), 429 U.S. 830, 50 L. Ed. 2d 94, 97 S. Ct. 91.) Whatever it is that "Spring Green" suggests, cannot differ from that suggested by "Spring-Green." And, while the parties and the trial court have spent much time and effort attempting to determine whether or not one party fertilizes and mows as opposed to sprays and cuts, the basic service supplied by both parties is that of lawn care and maintenance. Drawing fine distinctions within this general area misses the point of the inquiry. The persons to be considered in determining whether confusion is likely include the ignorant and inexperienced as well as those with some greater knowledge of lawn care. (*St. Charles Manufacturing Co. v. St. Charles Furniture Corp.* (N.D. Ill. 1979), 482 F. Supp. 397.) It cannot reasonably be contested that the viewer of defendant's mark "Spring-Green" would be likely to associate the lawn care service with which it is connected with the source of the lawn care service with which "Spring Green," plaintiff's mark, is connected. (*James Burrough Ltd. v. Sign of The Beefeater, Inc.* (7th Cir. 1976), 540 F.2d 266.) Similarly, the evidence demonstrates that both parties have, over the years, been listed side by side in the white and yellow pages of the telephone directories, thereby demonstrating similarity of service offered as well as similarity of geographical area to which the service is offered.

The trial court discounted the evidence presented by plaintiff as to actual confusion and noted that plaintiff had presented no evidence of actual damage. Plaintiff introduced four witnesses who testified as to instances of actual confusion, and he himself testified that he had received over 300 telephone calls between 1978 and 1982 from callers who mistakenly took him for defendant. Such evidence is to be afforded substantial weight. Moreover, a showing of economic or actual damage *per se* is not required; the owner of a mark is damaged by a later use of a similar mark which places the owner's reputation beyond its control, though no loss in business is shown. (*James Burrough Ltd. v. Sign of The Beefeater, Inc.* (7th Cir. 1976), 540 F.2d 266.) Damage is presumed upon a finding of likelihood of confusion. 540 F.2d 266.

Finally, as to defendant's intent, where, as here, the marks are so similar as to almost necessarily lead to complication and confusion in the business of the two parties, it is of no importance that defendant had no knowledge of the existence of plaintiff until after it had organized its lawn care business, or that defendant had no intention of injuring plaintiff. (*Koebel v. Chicago Landlords' Protective Bureau* (1904), 210 Ill. 176, 71 N.E. 362.) For plaintiff to prevail in his action for service mark infringement, he must merely establish that the alleged infringer uses a mark likely to cause confusion. We find that plaintiff here has established likelihood of confusion.

Based on our finding that (1) plaintiff's service mark "Spring Green" is registrable and valid, (2) plaintiff has shown prior and continuous use of this mark, and (3) defendant's use of the similar mark "Spring-Green" is likely to cause confusion on the part of the consuming public, we find that service mark infringement exists. We therefore reverse the trial court's order granting defendant's motion for a directed finding as to counts I (infringement of plaintiff's state registered mark), II (common law infringement), and VII (infringement under the Lanham Act).

■ Count III of plaintiff's complaint alleges dilution of plaintiff's name under section 15 of the Illinois Trademark Act (the antidilution statute) (Ill. Rev. Stat. 1981, ch. 140, par. 22). The antidilution statute empowers the circuit court to grant injunctive relief to enjoin the use of the same or any similar mark, trade name, label or form of advertisement if there exists either (1) likelihood of injury to business reputation or (2) dilution of the distinctive quality of the mark. The trial court in the instant case found neither of these bases for relief to exist. Our review of the record compels us to agree.

Plaintiff has not shown his mark to be the kind of strong mark

which, through much effort or costly and extensive advertising, has acquired a widespread reputation (*Polaroid Corp. v. Polaroid, Inc.* (7th Cir. 1963), 319 F.2d 830), and the kind of distinctiveness or secondary meaning requisite to support an action for dilution. (*Telemed Corp. v. Tel-Med, Inc.* (7th Cir. 1978), 588 F.2d 213.) Nor has plaintiff proved how his business reputation, while possibly placed beyond his control, is likely to be injured by the confusing similarity of defendant's mark with that of his own mark.

Finding that plaintiff has failed to present evidence necessary to prove a claim of dilution, we affirm the directed finding on count III.

■■ Counts IV and V of plaintiff's complaint allege statutory and common law unfair competition. Unfair competition is a broader concept than trademark infringement and depends upon likelihood of confusion as to the source of plaintiff's goods when the whole product, rather than just the service mark, is considered. (*Mars, Inc. v. Curtiss Candy Co.* (1972), 8 Ill. App. 3d 338, 290 N.E. 2d 701.) Under Illinois law, a plaintiff may be granted relief under the theory of unfair competition whether or not his product or service is in direct competition with defendant's product or service. (*National Football League Properties, Inc. v. Consumer Enterprises, Inc.* (1975), 26 Ill. App. 3d 814, 327 N.E.2d 242, *cert. denied* (1975), 423 U.S. 1018, 46 L. Ed. 2d 390, 96 S. Ct. 454.) The same set of facts and circumstances may be used to support a claim for both trademark infringement and unfair competition, and a finding in favor of the former claim typically results in a finding for the latter. *James Burrough Ltd. v. Sign of The Beefeater, Inc.* (7th Cir. 1976), 540 F.2d 266.

Based on our previous finding of likelihood of confusion and on our consideration of plaintiff's service as a whole, namely, that of lawn care and maintenance, we find plaintiff has presented enough evidence on his claim of unfair competition to survive a motion for a directed finding. We therefore reverse the trial court's decision on counts IV and V.

Plaintiff, in count VI of his complaint, requests attorney fees, alleging that defendants have and will continue to knowingly and intentionally "play on the good will associated with plaintiff's mark." As defendants correctly point out, attorney fees are not recoverable in Illinois unless provided for by statute. (*Meyer v. Marshall* (1976), 62 Ill. 2d 435, 343 N.E.2d 479.) Therefore, plaintiff cannot recover attorney fees for his common law claims. In addition, attorney fees are not provided for under the Illinois Trademark Act (Ill. Rev. Stat. 1981, ch. 140, par. 20).

■■ Fees may, however, be recoverable, under section 43(a) of

the Lanham Act (15 U.S.C. sec. 1125(a) (1982)), in exceptional cases where defendants have acted in bad faith, vexatiously, wantonly, or for oppressive reasons; and, under the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 313), if the court finds that the defendant wilfully engaged in a deceptive trade practice. (*Clairol, Inc. v. Andrea Dumon, Inc.* (1973), 14 Ill. App. 3d 641, 303 N.E.2d 177, *cert. denied* (1974), 419 U.S. 873, 42 L. Ed. 2d 112, 95 S. Ct. 134.) At trial, evidence was presented showing that defendant failed to comply with two cease and desist letters sent to him by plaintiff's counsel in April 1978, and that defendant Carroll, the manager of H.R.M., was aware of the existence of Spring Green Landscaping for several years prior to the date on which the first cease and desist letter was received. In addition, when defendant's patent application was published for opposition in 1978, plaintiff opposed it. We find that these facts adduced at trial amount to "some evidence" of bad faith such as to withstand a motion for a directed finding on the issue of attorney fees. We therefore reverse the trial court's finding on count VI of plaintiff's complaint.

In summary, we find that plaintiff has presented some evidence on his claims of service mark infringement (counts I, II and VII), unfair competition (counts IV and V), and attorney fees (count VI) so as to withstand a motion for a directed finding at the close of plaintiff's case. We therefore find that the trial court's decision granting defendant's motion on these counts was against the manifest weight of the evidence, and we reverse and remand on counts I, II, IV, V, VI and VII for a trial on the merits. We affirm the trial court's decision on count III, finding that plaintiff has failed to make out a *prima facie* case of service mark dilution.

Reversed in part, affirmed in part, and remanded.

JOHNSON and ROMITI, JJ., concur.