Loyd THOMPSON, d/b/a Spring Green Landscaping, Plaintiff,

v.

Harry ASHNER, d/b/a Spring Green Lawn Care and Tree Care; Edward Bunzol, d/b/a Spring Green Lawn Care; Armand D'Agostino, d/b/a Spring Green Lawn Care; John Eckhart, d/b/a Spring Green Lawn Care; Robert Edman, d/b/a Spring Green Lawn Care; William Gundlach, d/b/a Spring Green Lawn Care; Robert Hess, d/b/a Spring Green Lawn Care; Thomas Hofer, d/b/a Spring Green Lawn Care; Robert Lubenow, d/b/a Spring Green Lawn Care; and Thomas Reidy, d/b/a Spring Green Lawn and Tree Care, Defendants.

No. 84 C 7211.

United States District Court, N.D. Illinois, E.D.

Jan. 2, 1985.

**472**

Marvin Benn, Wayne Michaels, George Hamman, Dawn Cassie, Hamman, Benn & Miller, Chicago, Ill., for plaintiff.

Theodore A. Shapero, Thomas F. Geselbracht, Diane Fields Geocaris, Rudnick & Wolfe, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This is a suit alleging trademark infringement and unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and under various state law theories. Plaintiff, Loyd Thompson ("Thompson") has moved for preliminary injunctive relief, while the various defendants have moved to dismiss or stay the case. For the reasons stated below, we grant defendants' motion for a stay under the abstention doctrine set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and its progeny. Accordingly, we do not reach Thompson's motion for a preliminary injunction.

### I

The following uncontested facts have been gleaned from the complaint, from the exhibits attached to the motion to dismiss and from undisputed assertions of fact in the parties' briefs. Because we have looked beyond the pleadings in ruling on this motion, we shall treat it as a motion for summary judgment as provided under Rule 56. *See* Fed.R.Civ.P. 12(b).[1]

In July, 1978, Thompson filed a trademark infringement suit in state court[2] ("the state court suit"), one which, as we shall see, is nearly identical to this suit. The suit names as defendants Spring-Green Lawn Care Corp., a Delaware corporation, William R. Fischer, the corporation's president, and Edward Carroll, a franchisee of the corporation doing business in Illinois. An amended complaint, filed in 1979, added HRM Enterprises, another franchisee, as a defendant. Although not listing them as defendants, the amended complaint named all of the defendants to this federal suit (except defendant Ashner) as franchisees of the corporation using the name "Spring Green Lawn Care." The state-court complaints alleged infringement of Thompson's state-registered service mark, common law trademark infringement, trademark dilution under Ill.Rev.Stat. ch. 140, § 22, and unfair competition under Ill.Rev.Stat. ch. 121½, § 312. A second amended com-

---

1. Fed.R.Civ.P. 12(b) provides in relevant part:
   If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

2. Thompson d/b/a *Spring Green Landscaping v. Spring-Green Lawn Care Corp., William R. Fischer, Edward Carroll, and HRM Enterprises, Inc.*, No. 78 CH 4773 (Cir.Ct. of Cook County).

plaint, filed in early 1982, added a claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

The gist of the state court complaint is the same as that of the complaint before us. Essentially, both allege the following facts: Thompson is a landscaping contractor, doing business under the trade name "Spring Green Landscaping." Thompson and a partner acquired this business in 1974. The business had been operating continuously under the "Spring Green" trade name since 1968. Thompson bought out his partner in 1975, and continued to use the "Spring Green" name. Defendant "Spring-Green Lawn Care Corporation" is also in the lawn care business, franchising others to use its "Spring-Green" mark. This corporation did not organize until 1977 and only began franchising then. Thompson registered his "Spring Green" mark in May, 1978. He claims in both suits that the defendants' use of their "Spring-Green" mark confuses the public, dilutes his own mark, and therefore warrants relief under the various statutory and common law theories mentioned above. Both complaints seek injunctive and declaratory relief, and damages. The only significant difference between the two complaints is that the Federal complaint names the individual franchisees, but not the franchisor, as party-defendants.

Having compared Thompson's state and federal complaints, we now summarize how Thompson progressed from state to federal court. The state court case proceeded through discovery, and the trial court denied cross-motions for summary judgment. In December, 1982, the case was tried. At the close of Thompson's case, the trial court directed a verdict against Thompson. He appealed, and on June 7, 1984 the Illinois Appellate Court reversed and remanded, holding that Thompson had made out a prima facie case on most of his theories. 126 Ill.App.3d 99, 81 Ill.Dec. 202, 466 N.E.2d 1004 (1984). The defendants in that

case sought review in the Illinois Supreme Court on August 20, 1984, shortly after the instant suit was filed. The Supreme Court denied leave to appeal on November 30, 1984, while the present cross-motions were pending.

Thompson filed this federal suit on August 20, 1984, just over two months after emerging as victor from the Illinois Appellate Court. Thompson moved for a preliminary injunction on September 14, 1984, and defendants moved to dismiss the same day. The motion to dismiss raises the defense of laches, and the doctrine of abstention of the *Colorado River* case. We turn now to abstention doctrine, which alone disposes of the case.

## II

In rare circumstances a federal court should decline to exercise jurisdiction even though a statute gives it power to hear the case. The "abstention doctrine" sets out the criteria for these rare circumstances, and it comes in several forms, usually premised upon notions of state-federal comity or other important policies.[3] For example, where resolution of an unclear and difficult issue of state law might moot a federal constitutional issue, a federal court will stay its jurisdiction pending a state court decision on the issue. *See Railroad Com'n of Texas v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Federal courts will also abstain where state law questions bear on important policy problems, or implicate an elaborate state administrative review mechanism. *See Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959); *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 S.Ct. 1424 (1943). Abstention may also be proper where a plaintiff seeks to enjoin pending state criminal proceedings. *See, e.g., Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

---

**3.** *See generally Colorado River,* 424 U.S. at 813–17, 96 S.Ct. at 1244–46; Field, *The Uncertain Nature of Federal Jurisdiction,* 22 Wm. & Mary

L.Rev. 683 (1981); Field, *Abstention in Constitutional Cases: The Scope of the Pullman Abstention Doctrine,* 122 U.Pa.L.Rev. 1071 (1974).

This case does not fall within any of these traditional categories of abstention, but does come within another variant of the abstention doctrine, dubbed "type four abstention" or "abstention to avoid duplicative litigation." *See* 17 C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure*, §§ 4241, 4247 (1978). The Supreme Court first articulated this type of abstention in the *Colorado River* case, setting forth several criteria for a federal court to use in deciding whether to decline to exercise jurisdiction because of a pending, parallel state proceeding. Recognizing that abstention can be justified "only in ... exceptional circumstances," 424 U.S. at 813, 96 S.Ct. at 1244, and that federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them," *id.* at 818, 96 S.Ct. at 1246, the Court nevertheless held that the combination of certain extraordinary factors would warrant abstention. The relevant factors are: (1) the order in which jurisdiction was obtained by the concurrent forums; (2) the desireability of avoiding piecemeal litigation; (3) the inconvenience of the federal forum; and (4) the absence of progress in the federal suit. 424 U.S. at 818–19; 96 S.Ct. at 1246–47. None of these factors is necessarily determinative. *Id.* In 1983 the Supreme Court reaffirmed the *Colorado River* approach, and added two factors to the list: (a) whether state or federal law provides the rule of decision on the merits; and (b) whether the state court can adequately protect the plaintiff's federal rights. *See Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 23–27, 103 S.Ct. 927, 941–43, 74 L.Ed.2d 765 (1983). The *Colorado River* and *Cone* approaches have been followed in this circuit. *See Board of Education of Valley View v. Bosworth*, 713 F.2d 1316, 1321–22 (7th Cir.1983) (affirming abstention because of parallel state proceedings); *Evans Transp. Co. v. Scullin Steel Co.*, 693 F.2d 715, 719–20 (7th Cir.1982) (vacating district court dismissal); *Microsoftware Computer Systems, Inc. v. Ontel Corp.*, 686 F.2d 531, 537–8 (7th Cir.1982) (reversing district court denial of abstention); *see*

*generally* 17 C. Wright, A. Miller, & E. Cooper, *supra*, § 4247. With the tests created by those cases in mind, we consider the facts of this case.

### III

■ This case presents the type of "exceptional circumstances" justifying a stay. Almost every *Colorado River* and *Cone* factor points strongly toward abstention. Probably the most powerful factor is the "desireability of avoiding piecemeal litigation." It is hard to imagine a case which overlaps a pending state case more. The legal issues in this case are identical to those in the state court case. The causes of action are the same. The facts are the same. Over the past six years, the state trial, appellate, and Supreme Courts have each had a look at these facts and issues. The case is awaiting retrial in the state trial court. It would be enormously wasteful, and downright foolish, for this court to litigate virtually the same case at the same time the state court tries the case again.

The only real difference between the two suits is the party defendants. But that difference in this context is only one of nomenclature. The defendants in this case are franchisees of the main defendant in the state case. Their rights to use the "Spring-Green" name derive from the franchisor's rights. The state court case will determine those rights. Thompson does not dispute this. He contends, however, that he needs preliminary injunctive relief in this court "because of the delays in obtaining relief against Spring Green Corp.," and of the refusal of the franchisees to stop using the service mark in the interim. Plaintiff's Memorandum Opposing Motion to Dismiss, at 12. He adds that his case on the merits is quite powerful, as evidenced by the Appellate Court's strong reversal of the state trial court's directed verdict. But Thompson does not really address the issue of piecemeal litigation, or any of the other *Colorado River* factors which are controlling. He does not say why he cannot ask the state court for emergency injunctive relief at this point,

especially if he is correct that the Appellate Court opinion makes his success on the merits very likely and that the franchisees are harming him irreparably. He does not say why he has not named the franchisees as defendants to the state court suit. In sum, regardless of the merits of his case, Thompson has not given any reason for fragmenting the case, by having two courts litigating the issues at the same time.

The other *Colorado River* and *Cone* factors also counsel abstention. The state court obtained jurisdiction six years ago, and still retains it. Moreover, the federal suit is in its infancy, while the six year old state suit has been tried on the merits and has climbed and descended the appellate ladder. In affirming one district court's decision to abstain, the Seventh Circuit in *Bosworth, supra,* found it prudent to abstain where parallel state proceedings have progressed substantially. 713 F.2d at 1322. Such is obviously the case here. It is also apparent that state law governs extensive rights in both suits. From 1978 to 1982, only state law issues were involved in the state case. Thompson added the Lanham Act claim in 1982, and that claim is the only federal claim in the case at bar. As the Appellate Court opinion recognizes, 126 Ill.App.3d at 104, 81 Ill.Dec. at 208, 466 N.E.2d at 1010, the Lanham Act analysis and the state law trademark analyses are very similar. Thus, the federal claim is not predominant or even very significant in this suit. For this reason, the last *Cone* factor also favors abstention. State court proceedings will be fully adequate to protect Thompson's federal rights.

In bringing this federal suit, Thompson has created the possibility of a race to judgment. The Seventh Circuit has wisely frowned upon such races:

> Since the first court to decide the dispute will bind the other, the maintenance of an extra action will have a perceptible effect upon proceedings in the original action if the parties there attempt to accelerate or stall the proceedings in order to influence which court finishes first. The result would be quite similar to forum shopping, and is just as unseemly.

*Microsoftware,* 686 F.2d at 538. In seeking preliminary injunctive relief, Thompson is asking this Court to short-circuit a parallel six-year old state court suit. We decline to do so. In so declining, we are not prejudicing Thompson's federal rights, as we pointed out above. We add, moreover, that Thompson chose the state court forum six years ago. This is not a case where one party won a close footrace to the state courthouse, thereby depriving his adversary of a federal forum to vindicate federal rights. Because of the *Colorado River* and *Cone* factors, Thompson must live with his original choice of forum.

## IV

Although we are granting defendants' request to abstain, at this time we must deny without prejudice their request to dismiss the case. In *Cone* the Supreme Court reserved decision on whether a dismissal or stay would be the preffered course of action when *Colorado River* counsels abstention. 103 S.Ct. at 943. The Court added in *dictum* that the difference is largely academic, *id.,* and at least one commentator has agreed. *See* 17 C. Wright, A. Miller, & E. Cooper, *supra,* § 4247, at 517–19. However, the Seventh Circuit has held that a stay is the preferred choice in this Circuit. *See Bosworth,* 713 F.2d at 1322; *Evans,* 693 F.2d at 717–18. Accordingly, we will stay these proceedings pending resolution of the state court suit. We will place this case on the Court's status call for June 28, 1985, at 10:00 a.m. At such time we will determine whether to continue the stay or reconsider defendants' motion to dismiss.

## V

Thompson's motion for a preliminary injunction is denied. Defendants' motion to dismiss is denied at this time, but their alternative motion to stay these proceed-

ings is granted.[4]  The status hearing is continued to June 28, 1985, at 10:00 a.m. It is so ordered.

---

**4.**  In so holding, we express no opinion on the merits of Thompson's claim or on the defend- ants' defense of laches.